# Dewald, Administratrix, Appellant, *v.* Hines, Director General.

*Negligence—Railroads—Master and servant—Risk of employment—Flagman—Operating train around blockade—Notice—Nonsuit.*

1. An employee assumes, as a risk of his employment, such dangers as are normally and necessarily incident to his occupation.

2. A workman of mature years is taken to assume such risks whether he is aware of their existence or not.

3. A flagman who is detailed from a blockaded train on a southbound track, to go to the rear and flag trains that may come south on either the south- or northbound track, assumes the risk of danger on both tracks and if he is killed by a train running south on the northbound track, no recovery can be had for his death.

4. A railroad company is not negligent because it does not notify employees of its purpose to operate trains against traffic around a blockade.

5. The fact that an engine may not be able to stop before it reaches a flag, is a risk assumed by a flagman.

Argued February 19, 1924. Appeal, No. 304, Jan. T., 1924, by plaintiff, from order of C. P. Schuylkill Co., Jan. T., 1920, No. 282, refusing to take off nonsuit, in case of Ida R. Dewald, Administratrix of estate of Edward S. Dewald, deceased, v. Walker D. Hines, Director General of Railroads, and Philadelphia & Reading Railway Co. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Trespass under Federal Employer's Liability Act to recover damages for death of plaintiff's husband. Before BERGER, J.

The opinion of the Supreme Court states the facts.

Nonsuit; refusal to take off. Plaintiff appealed.

*Error assigned* was, order, quoting it.

*A. D. Knittle,* for appellant.—It is the duty of the master to warn his servants of new or increased dangers caused by a change in his machinery, appliances or place or methods of work, and he will be held liable for injuries resulting from his neglect of duty in this respect: Burns v. Coal Co., 223 Pa. 473; Coll v. Mfg. Co., 230 Pa. 86; Yeager v. Brewing Co., 259 Pa. 123; Lewis v. Seifert, 116 Pa. 628; Reed v. R. R., 243 Pa. 562; Miller v. R. R., 41 Pa. Superior Ct. 625; VanZandt v. R. R., 248 Pa. 276.

What ordinary risks of service are, has been variously defined and may, in final analysis, be summarized as such risks as the master cannot control: Caldwell v. Brown, 53 Pa. 453; Feussner v. Ry., 258 Pa. 303.

A breach of duty by the master is not one of the risks which one assumes on entering upon the employment of another: Falyk, Admrx., v. R. R., 256 Pa. 397.

*John F. Whalen,* with him *George Ellis,* for appellee.

OPINION BY MR. JUSTICE KEPHART, March 24, 1924:

A coal train of defendant reached Auburn at 5:10 o'clock January 7, 1918, a rainy, drizzly, sleety morning. This train, on the regular southbound track, was held up at Auburn owing to operating conditions. In so doing it got on the time of passenger train No. 30, going south, scheduled to arrive at Auburn at 6:01. Dewald, employed as a flagman on the coal train, in the performance of his duty went back to protect the rear of his train against southbound movements; under the uncontradicted evidence it was his duty to flag and stop all southbound trains on either the south or north track. To enable train No. 30 to make its regular schedule, defendant did as is customary on all railroads,—ran the passenger train from the south track to and on the northbound track, around the coal train. While proceeding on the latter track the flagman was struck by the passenger train and killed. In this action to recover dam-

ages, the court below entered a nonsuit because plaintiff failed to show defendant's negligence. This appeal is from the refusal to take off the nonsuit.

Appellant urges the failure of defendant to give deceased notice of the time and manner in which the passenger train would move, convicts it of negligence in that the duty to furnish employees a safe place to work and to provide a safe method for doing the work was violated.

If there was any risk connected with the duty of the flagman to flag both tracks, clearly he assumed that risk. We said, in Dutrey v. P. & R. Ry., 265 Pa. 215, 219, "An employee does not assume the risk of his employment, where the injury is due to the violation of a statute enacted for the safety of employees......'In all other cases such assumption shall......[be] a complete bar to the action': Seaboard Air Line v. Horton, 233 U. S. 492, 503; Jacobs v. Southern Ry., 241 U. S. 229, 235; Boldt v. Penna. R. R., 245 U. S. 441, 445.......The common law doctrine of assumption of risk still remains as a complete defense......to a case such as presented by the facts now before us. The employee assumes, as a risk of his employment, such dangers as are normally and necessarily incident to his occupation, and a workman of mature years, is taken to assume them whether he is aware of their existence or not; but risks of another sort, not naturally incident to the occupation, may arise out of the failure of the employer to exercise due care. They are the unusual, extraordinary and unexpected acts, and the employee [does] not......[assume] such risks until he becomes aware of their existence, unless the act or risk is so obvious that an ordinarily prudent person would have observed and appreciated them : Seaboard Air Line v. Horton, supra; Jacobs v. Southern Ry., supra; Boldt v. P. R. R., supra; C. & O. Ry. Co. v. DeAtley, 241 U. S. 310, 315; Erie R. R. Co. v. Purucker, 244 U. S. 320; C. & O. Ry. Co. v. Proffitt, 241 U. S. 462, 468."

To perform his duty, Dewald should have placed himself in a position as flagman to avoid injury; standing in the path of the train, between or close to the rails, is one of the risks a flagman undertakes in accepting the position. If the passenger train was on the northbound track, running against the current of its normal traffic, —and it was deceased's duty to "flag" that track,—as the train approached, he should have seen it in time to avoid collision; the danger incident to such acts was assumed. Plaintiff's counsel admits he could see 250 feet ahead; as an "experienced railroader" he should, on the approach of the train, have known the track it was on, stepped promptly a few feet to the side, and avoided injury. This could have been done by stepping either towards the southbound track or to the right-of-way along the northbound track.

The testimony of Murdock, however, does not show deceased was in the act of flagging when killed. No one knows just what he was doing then. Murdock saw some slight movement of the hand, stating "he did not swing any signals." He said he saw him move his hands a little (indicating it), and "in quite a short time the train came around the curve, I just saw a flash of light, and then it was over."

Aside from the fact the statement of claim did not raise negligence through failure to stop on signal, the evidence does not support such claim, and, even if it did, the fact that the engine may not be able to stop before it reaches a flag, is a risk assumed by the flagman. He is not required to stand in the middle of the track as the engine bears down on him, taking the chance of its stopping. His duty requires him to step to the side so as to inform the engineman of what is ahead; and, as a general rule, the flagged train approaches the flag slowly to permit the flagman to get on. The size of the train, the speed, and the condition of the rails often prevent stopping.

If, however, Dewald was to flag the southbound track only, as appellant's argument at times would indicate, then, in the line of his duty, he had clearly no business on the northbound track. His place was on the southbound track to protect the rear of his train; therefore the appearance of a train in either direction on the northbound track would cause him no injury.

A company is not negligent because it does not notify employees of its purpose to operate trains against traffic around a blockade. To so hold would not only retard train movements, but would be a great menace,—out of all proportion to the good accomplished,—to those of the traveling public who are compelled to use these highways.

It is a common occurrence in the every-day life of railroads,—and all persons who have occasion to use railroads as passengers know it,—that the present-day operation necessitates the movement of traffic around blockading trains so that the business of the road may be conducted with dispatch. As the court below says, "It would be unreasonable, and, indeed, a thing unheard of, to require a railroad company, when it sends out a watchman to flag a train or to warn approaching trains, to send a second man to watch the first one and to warn him of the approach of trains. However, if this could be expected and required, the second watchman would be in just as great need of a third watchman as was the first of the second, and so on ad infinitum."

Appellant's counsel argues, had Dewald been warned of the change in train movements, he could have stopped the passenger train and returned in safety to his own train. This would have exposed the rear of the train he was guarding to other traffic, thus placing travelers and employees in greatest danger. The only reason appearing to us to adopt this view seems to be because this unfortunate man failed to observe the most ordinary rules of self protection. Exposing the rear of trains without guard is one of the most serious menaces to public

travel; it should not be permitted under any circumstances, and certainly no decree of an appellate court should require such thing to be done.

In Schlemmer v. Buffalo, R. & P. Co., 220 U. S. 590, 55 L. ed. 596, it is said (p. 596), respecting the doctrine of the assumption of risk: "In the absence of statute taking away the defense, or such obvious dangers that no ordinarily prudent person would incur them, an employee is held to assume the risk of the ordinary dangers of the occupation into which he is about to enter, and also those risks and dangers which are known, or are so plainly observable that the employee may be presumed to know them." See also Chicago, R. I. & P. R. Co. v. Ward, 252 U. S. 18, 64 L. ed. 430. There was no extraordinary circumstances intervening, and deceased met death either in the performance of his duty or while waiting to perform it. The defendant is not liable in damages, since it is not an insurer against all accidents to employees.

Judgment affirmed.