Taylor v. Phila. R. T. Co., Appellant.

Argued November 1, 1932.

Before TREXLER, P. J., KELLER, GAWTHROP, CUNNINGHAM, BALDRIGE, STADTFELD and PARKER, JJ.

*Richard Dilworth* and with him *Bernard J. O'Connell,* for appellant.

*Walter I. Summerfield,* for appellee.

OPINION BY BALDRIGE, J., December 16, 1932:

The plaintiff, 72 years of age, was struck by a trolley car at the intersection of 12th and Market Streets, Philadelphia, about 2:30 p. m., on January 5, 1928, as she was walking from the north to the south side of Market Street on the east side of 12th Street. She brought suit and recovered damages.

The appellant's sole contention is that the plaintiff was guilty of contributory negligence.

The plaintiff testified, in direct examination, that before leaving the curb she saw the traffic light was green for 12th Street traffic, that she started to cross, and as she proceeded she observed a trolley car standing on the west side of 12th Street. She passed the west-bound track and was about to step off the south

rail of the east-bound track when she was hit by the trolley. Other testimony was offered by the plaintiff that the trolley had started when the amber light was on, which did not turn green for Market Street traffic until the trolley was three-fourths of the way across 12th Street, which is 26 feet wide from curb to curb.

The defendant maintains that, although the traffic lights were favorable when the plaintiff left the curb, she was not relieved from further reasonable observation of the traffic and traffic lights, especially when the street she was crossing was 62 feet from curb to curb.

Plaintiff admits that she was not continually watching the light, and, on cross-examination, stated that she did not see the trolley after she had committed herself to the crossing as she was looking straight ahead in her endeavor to reach safely the sidewalk. Numerous pedestrians were travelling in both directions. She started to cross the street when and where she had a right so to do. Her duty then was to proceed as rapidly as the conditions permitted. If the defendant had exercised due care, as the plaintiff was justified in assuming, the accident would not have occurred: Adams v. Gardiner, 306 Pa. 576, 160 A. 589. The court would have been clearly wrong in holding that it was her legal duty to stop or turn back when the light turned amber. The very purpose of the amber light is to give those who have embarked on a street crossing an opportunity to gain the sidewalk. All operators of trolley cars and automobiles should recognize that pedestrians, at intersections, when lights or signals are favorable, have certain rights, and that drivers and motormen are required to wait until foot traffic has had an opportunity to complete the crossing. Reasonable time should be given people to cross safely streets at intersections, notwithstanding that the lights may have changed after they have committed themselves

to the street. It seems to be necessary to continue to impress upon operators of motor vehicles and trolleys their duties at crossings. Mr. Justice KEPHART very emphatically and clearly expressed this obligation in the case of Gilles v. Leas, 282 Pa. 318, 320, 127 A. 774, wherein he said: "Generally stated, it is the ordinary case of a signal, given by a policeman, at intersecting streets, for traffic to move while pedestrians are in the highway in the act of crossing the street. Some automobile drivers imagine this signal gives them a clear right of way against intersecting traffic; they start their machines recklessly and rapidly regardless of persons already in the driveway, terrifying if not actually striking them. It is a common occurrence for people to narrowly escape injury because of such carelessness...... In the crowded condition of our public thoroughfares, traffic officers cannot always clear the intersecting ways before giving a signal for vehicular traffic to move on the street that is being crossed by pedestrians. The responsibility rests with the automobile drivers to so handle their cars as not to injure those already in the street...... He had an undoubted right to leave his place on the sidewalk when nothing appeared before him, and the traffic signal was not turned against him. His position became perilous only through the unlawful act of defendant."

The Supreme Court, again, in the case of Newman et ux. v. Protective Motor Service Co., 298 Pa. 509, 512, 148 A. 711, through Mr. Justice SCHAFFER, pointed out that "where there is crowded traffic, where the pedestrian must pay heed to the many others crossing the street at the same time as himself and, for his own protection, is apt to be on the lookout for motors that may turn around the corner into his path at any moment, in cases where the municipality maintains signals controlling traffic, the signal in the pedestrian's favor, inviting him to cross, warrants his so doing,

and he is justified in relying upon the assumption that motor vehicles warned by the traffic signal set against them, will not disregard it and run him down." See also Galliano v. East Penn Elec. Co., 303 Pa. 498, 154 A. 805; Byrne v. Schultz, 306 Pa. 427, 160 A. 125.

In the very recent case of Villige v. Yellow Cab Co. of Pgh., (opinion filed November 28, 1932), the plaintiff attempted to cross 5th Avenue, in Pittsburgh, when the lights were favorable to her, and when she was in the middle of the avenue she observed a cab approaching rapidly, which violated the traffic lights and struck her. Mr. Justice SCHAFFER said: "Under these circumstances, it could not be said as a matter of law that she was guilty of contributory negligence in not stopping or turning back......We have laid down rules to protect pedestrians at street crossings. We intend to maintain these rules with all possible strictness."

In Wack v. P. R. T. Co., 93 Pa. Superior Ct. 206, when traffic, under the direction of an officer, had stopped on Chestnut Street and was moving on 18th Street, Philadelphia, the plaintiff started to cross the former street. She saw the defendant's car approaching on her right from 19th Street, but, as the signal was against the trolley car, she continued walking, and was hit by defendant's car. The court below held that plaintiff was guilty of contributory negligence because she kept in her course after she saw the trolley car almost upon her. We reversed and held that the rules applicable to crossing trolley tracks where there is no policeman or signal do not apply where an officer or signal is directing traffic, as a pedestrian may rely on the way being clear and may undertake to cross although a street car or vehicular traffic is approaching within a distance that might be otherwise dangerous.

In Griffith v. P. R. T. Co., 267 Pa. 81, 110 A. 76, cited by appellant, there were no signal lights, nor

was an officer directing traffic. In Weaver v. Pickering 279 Pa. 214, 123 A. 777, a pedestrian was attempting to cross the street between intersections. These cases are entirely dissimilar in their facts from the case at bar.

In our opinion, the question of defendant's negligence, of which there seems to be no question, and of plaintiff's contributory negligence, was for the jury, and the verdict in favor of the plaintiff should not be disturbed.

Judgment is affirmed.