Jacobson, Appellant, v. Palma.

Argued November 2, 1934.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADT-FELD, PARKER and JAMES, JJ.

*Harry Cohen,* for appellant.

*Joseph Margolis,* and with him *I. Herman Margolis* of *Margolis & Margolis,* for appellee.

OPINION BY BALDRIGE, J., December 18, 1934:
This appeal is from the order of the court below

entering judgment n. o. v. for defendant in an action of trespass for personal injuries.

On November 7, 1932, about 6 P. M., rain was falling and there was some wind. The plaintiff, in company with Walter Langebartel, was standing under a light standard at the southeast corner of Broad Street and Roosevelt Boulevard, waiting for a green signal to permit northgoing traffic to proceed. The boulevard runs in a northeast and southwest direction and enters Broad Street at a 59% angle. The plaintiff was holding an umbrella over her head, high enough to accommodate her companion, who was six or eight inches taller than she. The eastbound traffic had stopped, and about the time they entered the cartway, a favorable signal had been given traffic on Broad Street. Defendant's automobile had been standing on the east side of Broad Street about 25 feet south of the boulevard, the first in line of the waiting cars. Desiring to enter the boulevard, he turned to the right at a speed, according to plaintiff's companion, of 25 miles an hour. The plaintiff left the curb at a point in line with the buildings fronting on Broad Street and had taken four or five steps northward, when the accident occurred. As the pavement is about 20 feet wide, defendant travelled approximately 45 feet from the time he started his car until the plaintiff was hit. Officer Huttinger, who was directing traffic that night at the intersection of Broad Street and the boulevard, when asked where the usual crossing is for people desiring to go north across the boulevard on the east side of Broad Street, said: "Well, the crossing, I would say, would extend about 15 to 20 feet from the intersecting curb line. That is, the crossing would take from the east curb along Broad Street, 20 feet east of that would be the crossing;" that there was but a trace of a marking for the crossing, which could not have been noticed at that hour of the night.

There was some contradictory testimony as to the exact point plaintiff entered the cartway of the boulevard. She said that a short distance east of the intersection she got out of an automobile which had been driven into the boulevard, walked back on the sidewalk to the corner of Broad Street and the boulevard, and waited for the lights to change in her favor; that she was about 5 feet east of the traffic light, which stands 3 to 5 feet west of the Broad Street building line. Immediately across from this light standard, 60 feet distant, is a safety island, on which there is a subway station entrance.

In view of the angle of this intersection, and the other evidence offered, the trial judge could have found that the plaintiff attempted to cross the street at the place used by pedestrians. The trial judge, sitting without a jury, found for plaintiff in the sum of $350, and the court below, in banc, entered judgment for defendant n. o. v.

Accepting, as we must, the truth of plaintiff's testimony that before leaving the sidewalk she looked, saw no traffic moving east on the boulevard, and had a favorable light, there were no conditions prevailing then to warn her of impending danger. She, as a pedestrian, not only had the right, but a superior right to the driver of the automobile, to use the cartway to reach the safety island. It can not be said, in such circumstances, as a matter of law, that she was guilty of contributory negligence. In Rosenthal v. Phila. Phonograph Co., 274 Pa. 236, 117 A. 790, a pedestrian at a crossing stepped from the curb to the cartway and proceeded three steps when he was struck by an automobile turning around the corner from another street. The court held that the case was for the jury. See, also, Gilles v. Leas, 282 Pa. 318, 127 A. 774; Newman et ux. v. Protective Motor Service Co., 298 Pa. 509, 148 A. 711; Villiger v. Yellow Cab Co. of Pgh., 309 Pa. 213,

163 A. 537; Catarious v. Benjamin, 100 Pa. Superior Ct. 184; Taylor v. P. R. T., 107 Pa. Superior Ct. 124, 163 A. 538. If the plaintiff was actually hit a short distance from the regular crossing, as appellant alleges, that of itself would not necessarily convict her of negligence. She was not restricted to the use of the established crossing in her endeavor to pass from one side of the street to the other. Of course, it was her legal duty, at whatever point she attempted to cross, to have due regard to the traffic conditions before entering the cartway: Pensak v. Peerless Oil Co., 311 Pa. 207, 166 A. 792; Grebe et al. v. Kligerman, 310 Pa. 60, 64, 164 A. 796. This court, speaking through President Judge TREXLER, said, in Kellner v. Parker, Jr. et ux., 106 Pa. Superior Ct. 522, 525, 163 A. 353: "Whether there was a definite crossing was not precisely shown, but there was a street intersection ...... Whether the crossing was diagonal or straight across made no difference, as in either case defendant was obliged to slow up when approaching it."

The appellate courts have held many times that at crossings it is the duty of drivers to be exceedingly vigilant; that they must have their cars under such control that they can stop at the slightest indication of danger, as they are required to recognize the superior rights of people using the regular crossings. It is not vitally important whether the car was travelling at a high or moderate rate of speed if the plaintiff's rights were disregarded. Mr. Justice MAXEY said in Galliano v. East Penn Elec. Co., 303 Pa. 498, 503, 154 A. 805: "It is the duty of a driver of a street car or motor vehicle to have his car under control at all times, and having one's car under control means having it under such control that it can be stopped before doing injury to any person in any situation that is reasonably likely to arise under the circumstances."

There was sufficient evidence to support plaintiff's

contention that if defendant had used due care by watching for pedestrians when he turned into the boulevard, this accident would not have occurred. Drivers of cars should keep in mind when turning corners into intersecting streets, and the lights are favorable to pedestrians, that the latter's rights are paramount. Turning heedlessly and recklessly, especially when one should reasonably anticipate the use of a crossing, is the cause of many unfortunate accidents which ought to and could easily be avoided if some thought were given to the rights and safety of others.

The defendant denies that he hit the plaintiff, and argues that on account of the wind and rain she blindly walked into his car; that the incontrovertible physical facts demonstrate the correctness of this theory, as she came in contact with the hinge on the door, as stated by her companion. The difficulty with that contention is that assuming the front portion of the car did not hit the plaintiff, it does not follow that she walked into the side of the car or that she was otherwise negligent. It is easily conceivable, and it is not contrary to human experience, that the front portion of the car missed the plaintiff, but, in turning, the car was driven too close for her to escape being brushed or struck by the side of it. See Ross v. Riffle, 310 Pa. 176, 164 A. 913; Pensak v. Peerless Oil Co., supra (311 Pa. 207, 166 A. 792). To run down a pedestrian, who does not change her course, and who may be seen by a driver if he is vigilant, is, in itself, evidence of negligence: Robb v. Quaker City Cab Co., 283 Pa. 454, 129 A. 331.

Judgment is reversed and is now directed to be entered for the plaintiff on the finding of the trial judge.