Sonil et al. *v.* Pittsburgh Railways Company,
Appellant.

Argued May 1, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*D. H. McConnell,* with him *J. R. McNary,* for appellant.

*J. Thomas Hoffman,* with him *Louis J. Groudine,* for appellee.

OPINION BY STADTFELD, J., July 10, 1936:

The plaintiff obtained a verdict against the defendant company in an action of trespass. Defendant filed no motion for a new trial, but only a motion for judgment non obstante veredicto. The court overruled this motion in an opinion by MARSHALL (T. M.), J. From the judgment entered on the verdict, this appeal was taken.

In the disposition of the motion for judgment n. o. v. all facts, and the inferences reasonably to be drawn from them, must be resolved in favor of plaintiff.

At the time of the accident, the plaintiff, a minor, aged about nineteen years, at 8:15 in the evening during daylight hours, was walking across Murray Avenue in the City of Pittsburgh from the west to the east side of the street. She was on the north cross walk where Beacon Street intersects Murray Avenue at nearly right angles. Beacon Street is 48 feet wide and Murray Avenue is 41 feet wide, both measurements from curb to curb. On Murray Avenue are double trolley tracks running north and south. There are traffic lights at the northeast and southwest corners of the intersection. The minor plaintiff had crossed the first, or south bound tracks, and was in the north bound tracks when struck by a north bound car that had come through a red light set against it. The plaintiff looked before starting across and continued to look.

We quote from plaintiff's testimony: "A. Down at the corner where pedestrians cross. I stood there and waited on the red light, until it turned green, wanted to see it would be green before I started to cross. Then I looked both ways and seen a car coming down from

Homestead. I started off the curb to cross, and got on the first rail, and looked again. It was coming up full speed, about twenty-five feet from the corner of Beacon Street. I looked both ways to see how traffic was coming and the light was red, and it was about ten feet away. I kept on going and when I entered on the third rail I drew back as far as I could—Q. You say when you got to the first rail you looked? A. Yes. Q. Where was the street car then? A. About twenty-five feet from the curb of Beacon Street. Q. It hadn't yet come up to Beacon? A. No, it hadn't. Q. After the first rail when did you first look again? A. I looked again before I started to go farther. Q. And just before you got to the third rail when you looked where was the street car? A. About just leaving the corner of Beacon Street. Q. And how was the light at that time? A. Still green. Q. And you continued on did you? A. I did. Q. And you say you were then on the inbound street car track? A. Going towards Forbes Street. Q. When you got on that inbound track did you see the street car? A. Yes. Q. How far was it from you when you saw it then? A. About ten feet away. Q. What did you do? A. I drew back. Q. Why did you do that? A. I drew back because it was not going to check, but going ahead. Q. Did you succeed in getting all the way off the track? A. Yes, as far as I could, but there was a car behind me—Q. An automobile or street car? A. Automobile. Q. Was the automobile standing or moving? A. Standing." On cross-examination, the plaintiff testified: "Q. How fast, using miles per hour, do you know? A. I don't know using miles per hour. Q. You have no idea at all. When you got to the second rail the front of the street car was twenty-five feet south of Beacon Street is that it? A. Yes. Q. Now, did you keep on watching the street car? A. Yes. Q. And did you keep on going across? A. Yes. Q. When you reached the track the street car was on, where was

the street car? A. What? Q. Let's get this straight. When you first saw the car it was twenty-five feet from Beacon Street, and when you reached the rail how far was it from Beacon Street? A. It was at the corner of Beacon Street. Q. Then it had gone twenty-five feet, had it? A. About. Q. While you were going from the first rail to the third rail the street car came twenty-five feet, is that right? A. Yes. Q. How far is it from the first rail to the third? A. About ten feet."

According to her testimony, just before she got to the third rail (the first rail of the track upon which she was hit) the street car was "about just leaving the corner of Beacon Street." The light was still in plaintiff's favor. Plaintiff was not bound to anticipate the negligent operation of the car through a red light, if it was changed after plaintiff stepped between the third and fourth rails.

In Taylor v. Philadelphia Rapid Transit, 107 Pa. Superior Ct., 124, 163 A. 538, the plaintiff, with a traffic light in her favor, started to cross the cartway toward the southeast curb from the northeast. She had crossed the west bound trolley tracks and was almost across the east bound tracks when struck by the defendant's car. She admitted that she saw the car when she left the curb, but she did not look for it again. This court held the question of her contributory negligence was for the jury; that reasonable time should be given pedestrians to cross safely, streets at intersections, notwithstanding that traffic lights may have changed after they have committed themselves to the street. The court cites Villiger v. Yellow Cab Company, 309 Pa. 213, 163 A. 537, wherein the court, by Mr. Justice SCHAFFER, said at p. 215: "We have laid down rules to protect pedestrians at street crossings. We intend to maintain these rules with all possible strictness." In Newman v. Protective Motor Service Co., 298 Pa. 509, 512, 148 A. 711, the court said: "In

cases where the municipality maintains signals controlling traffic, the signal in the pedestrian's favor, inviting him to cross, warrants his so doing, and he is justified in relying upon the assumption that motor vehicles, warned by the traffic signal set against them, will not disregard it and run him down."

In Clarke v. Hughes, 108 Pa. Superior Ct. 586, 165 A. 532, we held where a pedestrian commits herself to a crossing substantially ahead of an approaching car, she has the superior right of way and it is the duty of the approaching car to stop in order to give her an opportunity to complete the crossing.

We said, through our Brother BALDRIGE, in Jacobson v. Palma, 115 Pa. Superior Ct., 401, 175 A. 731, at p. 405: "The appellate courts have held many times that at crossings it is the duty of drivers to be exceedingly vigilant; that they must have their cars under such control that they can stop at the slightest indication of danger, as they are required to recognize the superior rights of people using the regular crossings. It is not vitally important whether the car was travelling at a high or moderate rate of speed if the plaintiff's rights were disregarded. Mr. Justice MAXEY said in Galliano v. East Penn Elec. Co., 303 Pa. 498, 503, 154 A. 805: 'It is the duty of a driver of a street car or motor vehicle to have his car under control at all times, and having one's car under control means having it under such control that it can be stopped before doing injury to any person in any situation that is reasonably likely to arise under the circumstances.' "

In our opinion, the questions of defendant's negligence, of which there seems to be no question, and of plaintiff's contributory negligence, were for the jury, and the verdict in favor of plaintiff should not be disturbed.

The assignment of error is overruled and judgment affirmed.