Argued November 22, 1946.
This appeal is from an entry of judgment n.o.v. for the defendant in a trespass action. *Page 292 
At about 10:30 o'clock on the morning of May 27, 1943, a clear day, the plaintiff was walking south on Preston Street in Philadelphia. When he reached the northwest corner of that street and Haverford Avenue he heard the ringing of a bell or gong and saw a fire engine, which was returning from an alarm of fire, proceeding south on Preston Street toward the firehouse, which is on the northeast corner of Haverford Avenue and Preston Street. He went to the center of the intersecting streets and stood in the middle of the trolley track which traverses Haverford Avenue. The only traffic on this avenue at that time was the defendant's trolley car at 41st Street, a distance of approximately 420 feet, moving eastward at a speed of 25 to 30 miles per hour. When the car was about 400 feet away the plaintiff, acting as a volunteer and probably with the intention of performing a civic duty of preventing collision, as Preston Street is not a regular trolley stop, held up his hands to warn the motorman, whom, the plaintiff said, he could see was looking at him, of the approaching fire engine. He continued to look at the trolley until it was some indefinite point between Budd Street, 230 feet away, and Ludwick Street, approximately 75 feet distant. He testified: "When the trolley car got to Budd Street I turned around and had my hands up and waved for the fire engine to come on, and the trolley car kept moving toward me."
The defendant's evidence was to the effect that this plaintiff jumped in front of the trolley when it was 5 to 20 feet from him.
The trial judge, following the decision in Kasanovich v. Georgeet al., 348 Pa. 199, 34 A.2d 523, instructed the jury that if they found that the motorman was guilty of "wanton misconduct" the defendant was liable even if plaintiff was guilty of ordinary negligence. After a verdict had been returned for the plaintiff the court below concluded, upon further consideration of the testimony that "the proofs clearly showed that the plaintiff *Page 293 
was guilty not merely of ordinary negligence, but was guilty of wanton negligence or, otherwise, considered, his conduct was such as to call for the application of the principle of assumption of risk, and on either ground his right to recover was barred." Accordingly defendant's motion for judgment n.o.v. was sustained. This case has similar features to those in the Kasanovich case. The plaintiff's decedent there, in plain view, was walking heedlessly for at least 75 feet, within 18 inches of the outside rail of a trolley track with his back to an oncoming trolley and was struck by the overhang of the car. The motorman, as here, had ample time to take the necessary steps to avoid hitting him. It was held that the contributory negligence of plaintiff's decedent did not bar a recovery, as the motorman's action constituted "wanton misconduct." It is true, however, that the question of whether the decedent recklessly disregarded his safety was not raised or discussed in that case.
We think that neither the doctrine of voluntary assumption of risk, nor wanton misconduct, which are closely related and founded on the same fundamental principles, has any application so far as plaintiff's evidence of his conduct is concerned, and that is all that need be considered in passing upon defendant's motion for judgment n.o.v. We may state in passing that "reckless disregard" for another's safety is preferred to "wanton misconduct" by some text writers. See § 500 Restatement of Torts and Eldredge's "Modern Tort Problems", pp. 179, 180. It could fairly have been assumed by Elliott that the motorman saw him standing on the track giving a signal for the trolley car to stop and that he would not be run down. Whether or not the plaintiff's conduct created an unreasonable risk involving a high degree of probability of harm to himself was a question for the jury's determination.
The court, in invoking the doctrine of voluntary assumption of risk relied on several cases in Pennsylvania to which we will briefly refer, as warranting the disposal *Page 294 
of this case as a matter of law. In De Wald v. Hines, 280 Pa. 169,124 A. 328, the suit was brought under the Federal Employer's Liability Act, by plaintiff whose decedent, a flagman, went from the rear of his blocked train to flag others and was killed by a passing train on another track. The court below nonsuited the plaintiff because no negligence of defendant was shown. The case was affirmed on appeal, the court holding that whatever risk the employe assumed he incurred in the discharge of his normal duties as a flagman.
In Magyar v. P.R.R., 294 Pa. 585, 144 A. 765, a switchman, while not directly on the tracks, was close to them so that he was hit by the overhang of an express passenger train, which was in his full view. The Supreme Court in granting of a nonsuit said, p. 589: "In the present case Magyar was aware of the dangerous position, was standing upright with the oncoming train in full view, and failed to move out of the reach of the locomotive, when he had ample opportunity to so move." The risk which he took was obvious and the injuries sustained were not the result of an unusual or unexpected act of the locomotive engineer.
In McMichael v. P.R.R., 331 Pa. 584, 1 A.2d 242, the last of this group of cases, the plaintiff in an intoxicated condition was on the tracks of the defendant company. He, of his own accord, selected a hazardous position for the purpose of drinking with some companions. His recovery was barred as he was guilty of contributory negligence. The granting of a nonsuit was upheld by the lower court without passing upon plaintiff's allegation that defendant's engineer was guilty of wilful or wanton misconduct.
Those cases with their dissimilar facts give no aid in the determination of this appeal.
According to text writers the term voluntary assumption of risk is confusing as it is used in a dual sense. First, as synonymous with the term contributory negligence, which implies negligence upon the part of both *Page 295 
plaintiff and defendant, and second, where there is no question of defendant's negligence, but where the risk is voluntarily assumed in the course of a master and servant, or some other voluntary, relationship such as landowner and licensee, guest and passenger, etc.: Harper on Torts (1933), 289, 296, §§ 130, 131; Bohlen, Voluntary Assumption of Risk (1906), 20 Harvard Law Review 14.
Section 893 of Restatement of Torts states and some decisions in other jurisdictions, to which reference will be made later, hold that if the plaintiff voluntarily and unreasonably exposes himself to a known danger created by defendant's negligence, he is barred from recovery for any injuries sustained. Notwithstanding the rationale of the doctrine of assumption of risk, it cannot be said as a matter of law that Elliott was fully conscious of the risk he incurred, and recklessly disregarded his own safety. One may not be guilty of even contributory negligence in failing to anticipate that a trolley car will not comply with a timely warning to stop: Van Note v. P.T.C., 353 Pa. 277,45 A.2d 71; Sonil v. Pittsburgh Rwys. Co., 122 Pa. Super. 169,186 A. 183; Swilley v. P.T.C., 153 Pa. Super. 467,34 A.2d 270. If the jury had accepted defendant's version that Elliott jumped on the tracks in front of the oncoming trolley then he, as a reasonable man, must have realized that it could not be brought to a stop in time to avert hitting him. That would be an example of a reckless disregard of his safety equal to defendant's alleged negligence and would bar a recovery. But, according to the jury's findings, the plaintiff did nothing of the sort.
Street cars do not have the sole use of streets: McFarland v.Consolidated Traction Company, 204 Pa. 423, 427, 54 A. 308. They are equipped to, and do, stop frequently in order to receive and discharge passengers. If a motorman sees a person on the track, who apparently *Page 296 
is not going to move, and there is sufficient time for the motorman to stop, it is his duty to do so to prevent injury or death.
In McPherson v. Philadelphia Rapid Transit Co., 85 Pa. Super. 275, plaintiff's automobile stalled on the trolley track. Defendant's trolley, coming in the opposite direction, had stopped to discharge passengers and the motorman saw the stalled automobile in time to avoid a collision but failed to stop. The court said, p. 277: "It was a question for the jury to decide whether the plaintiff should have left his automobile before the car hit it, or whether he was justified in remaining in it and trying to start it. His motor was stalled, not on a railroad, but on a street railway track . . ."
What we have heretofore said applies to a large extent to plaintiff's alleged "wanton negligence" or, in other words, to his reckless misconduct. Although there is a conflict of decisions, the weight of authority holds that such misconduct on the part of a plaintiff or decedent, which contributes to the injury or death, will prevent recovery although the defendant's conduct was also of the same degree of recklessness. The law in such a situation leaves the parties where it finds them: Annotation, 41 A.L.R. 1379. To bar a recovery a plaintiff must act in a reckless disregard of his own safety to practically the same extent that defendant acts in a reckless disregard of plaintiff's safety: Sections 482 and 503 of Restatement of Torts.
This plaintiff may have been meddlesome in volunteering to direct traffic, but that does not warrant a holding as a matter of law that he cannot recover for the injuries he sustained.
The additional cases cited by the court below and the appellant are not applicable to the case in hand. For instance, in Gill v.Arthur, (Ohio) 43 N.E.2d 894, the plaintiff with some companions, after drinking at a roadhouse, started for home in the car of the defendant, who was driving at a speed of 65 to 70 miles per hour, *Page 297 
with his car swerving back and forth across the road. The car finally stopped for a train at a crossing and one of the passengers in the car remonstrated with the defendant who replied: "Hell, you haven't seen anything yet." As might have been anticipated an accident occurred and plaintiff sustained injury. The court stated, p. 899: "Under the doctrine of assumption of risk the guest suffering an injury because of the wilful or wanton misconduct of the host driver cannot recover if he exposed himself to an obvious and appreciated danger."
In Price v. Schroeder, (Cal.) 96 P.2d 949, the guest passenger, plaintiff, served the defendant-host driver, liquor and drank with him all night. Finding for the defendant there was affirmed on appeal on the ground that plaintiff's own wilful misconduct contributed to his injury.
In Walsh v. Gazin, (Ill.) 45 N.E.2d 95, a motorman left his trolley and in crossing the street to visit a toilet provided by the company was struck by defendant's automobile, going 40 or 50 miles per hour. The jury rendered a special verdict for defendant, finding plaintiff was guilty of wanton misconduct which contributed to the injury. The appellate court reversed and ordered a new trial, stating, p. 97: "Circumstances may be conceived under which a pedestrian would be barred from recovery for injuries resulting from his own wilful conduct. However, in so far as we have been able to ascertain it has never been held that a pedestrian was guilty of wilful and wanton conduct merely because of his failure to observe a rapidly approaching automobile until it was close upon him."
It is unnecessary to discuss the other cases cited by the court below and appellant (Annotation 41 A.L.R. 1379) as, in our judgment, they do not control this case for the reasons hereinbefore set forth.
The judgment is reversed, record is remitted to the court below to pass upon the undisposed of motion for a new trial. *Page 298