**Kenneth W. FLICK**

v.

**JAMES MONFREDO, INC. and Horace J. Conover.**

**Civ. A. No. 70–848**

United States District Court, E. D. Pennsylvania. April 3, 1973.

Albert M. Hankin, Philadelphia, Pa., for plaintiff.

Sidney L. Wickenhaver, Philadelphia, Pa., for defendants.

## OPINION

GORBEY, District Judge.

Before this court are the defendant's motions for judgment N.O.V. and a new trial which were made following a bifurcated trial in which the jury found liability on the part of the defendant and awarded damages of $119,000.00 to the plaintiff. This action arose out of a collision between a motorcycle operated by the plaintiff and a tractor trailer truck owned by James Monfredo and operated by Horace J. Conover.

Since the jury returned a verdict in favor of the plaintiff, we must give the plaintiff the benefit of the most favorable view of the facts and all inferences therefrom. With this in mind, the jury could have reasonably found the following: On August 26, 1969, at about noon, the weather was clear and the roads were dry. The plaintiff was operating his motorcycle in a westerly direction on Quarry Road, in Bucks County, Pennsylvania. In the direction in which he was proceeding, the road curved to the right and sloped down-hill. On this section of Quarry Road there is no posted speed limit and the plaintiff was traveling at 30 miles per hour.

Conover, operating a 50 foot long tractor trailer truck belonging to Monfredo, was coming onto Quarry Road

from a field on the plaintiff's right, where construction had recently been started. At this point Quarry Road is about 18 feet wide and has no shoulders on either side. At this point there is a three foot high embankment with heavy foliage on top which prevents a motorist on Quarry Road from seeing into the field. The entrance from which the truck was proceeding is a narrow dirt lane hardly wider than the tractor trailer. Conover intended to turn left (*i. e.,* proceed in an easterly direction) on Quarry Road from the private driveway, but would be unable to do so without going forward and backward several times owing to the narrowness of Quarry Road. In making his entrance onto Quarry Road, Conover first stopped when his front bumper was at the edge of the paved road. Unable to see any traffic on Quarry Road because of the dense foliage, he proceeded slowly until his front bumper was about at the center of Quarry Road when he saw a motorcycle coming around the curve. As soon as he saw the motorcycle, he applied his brakes and came to a stop.

The plaintiff was unaware of the existence of the dirt driveway onto Quarry Road. The first time that the plaintiff saw or could see the truck when he came around the curve was about 100 feet from the private driveway. At that time the front end of the tractor was at about the edge of the road. The truck then proceeded into the highway. The plaintiff had applied his brakes which caused the motorcycle to skid, overturn and strike the truck.

The question of liability was submitted to the jury on a special verdict form and the jury found:

1) the defendants were negligent;

2) the negligence of the defendants was the proximate cause of the accident; and

3) the plaintiff was not contributorily negligent.

The defendant alleges several errors which he feels entitle him to a directed verdict or a new trial on the issue of liability.

■ First, the defendant contends that there could be no finding of liability on the part of a driver who enters a highway from a driveway where his vision is blocked if he enters slowly and continues to maintain a vigil. A similar argument was rejected in Brown et al. v. Jones, 138 Pa.Super. 350, 10 A.2d 839 (1940). In that case the defendant stopped one foot from the edge of a through highway which was as close as he could go without exposing himself to danger. He looked and saw no traffic since his view was limited by trees and a two story dwelling at that intersection. He proceeded slowly into the intersection and was struck by a car which he could not see until he had entered the intersection. In that case the court stated:

"We are not aware of any case that has gone so far as to declare that a driver who enters a through highway, under circumstances similar to those before us, and collides with a car driven thereon, is free of negligence as a matter of law."

Later quoting from Dixon v. Pentony, 116 Pa.Super. 443, 176 A. 782 (1935), the court stated, "Looking when his vision was obstructed was unavailing, and did not fulfill his legal duty." The court in *Brown* further quoted that "the courts hold one driving onto a through highway at a 'T' intersection to strict accountability." Accordingly, we cannot say it was error to submit the question of the defendant's negligence to the jury.

■ The defendant further alleges that the court erred in its instructions to the jury concerning the defendant's negligence. Specifically, they charge that the court's instruction:

"A driver who enters a highway from a private driveway is negligent for his failure to keep proper vigil for approaching traffic after he enters the highway."

was error. While there is no objection to this as being a proper statement of the law, they contend there is no evidence that the defendant failed to keep proper vigil after entering the highway. However, the defendant took no exception to this at the time the jury was charged, which precluded the court from correcting its error, if it was error. *See* New York Life Insurance Co. v. Seighman, 140 F.2d 930 (6th Cir. 1944) at 933 and 934.

 Next, the defendant objects to the portion of the charge which stated, "A motor vehicle driver who *suddenly* drives out into a highway from a private driveway in front of oncoming traffic so close to avoid collision where it cannot be avoided is negligent." Again, the defendant concedes this is a correct statement of the law. However, the defendant objects to the use of the word "suddenly" since the defendant testified he emerged "slowly". The defendant admitted that he came to a stop before he entered the highway and if he was stopped when the plaintiff had his first view of him, any movement would certainly have been sudden. Further, while the jury was charged that the driver of a vehicle entering a highway from a private road or drive shall yield the right-of-way to all vehicles approaching him on such highway, it was also instructed that the right-of-way is not an absolute right. Right-of-way does not operate to relieve a driver from a duty to drive with due regard to the safety of all persons using the highway nor does it protect the driver from the consequence of an arbitrary exercise of right-of-way.[1]

 Next, the defendant contends the plaintiff was contributorily negligent as a matter of law. He contends it is the clear duty of the plaintiff under the law, and particularly under the Pennsylvania Motor Vehicle Code, to be traveling at such a speed and to have his vehicle under such control as to be able to bring it to a stop within the assured clear distance ahead. He contends that the excessive speed is clearly proved by the fact that immediately upon coming out of the curve the plaintiff applied his brakes and was unable to stop before he struck the defendant's truck. In Reifel v. Hershey Estates, 222 Pa.Super. 212, 295 A.2d 138 (1972), the most recent pronouncement by the Pennsylvania court on the assured clear distance rule, the court held a driver cannot be released from the burden imposed by the assured clear distance rule through application of the sudden emergency exception when that emergency was created by his continuing to drive towards an intersection after seeing a vehicle approaching that intersection on a perpendicular street beginning to move toward that intersection after it had already stopped. In so holding, they relied upon Enfield v. Stout, 400 Pa. 6, 161 A.2d 22 (1960) stating:

> "If there is any evidence in an intersection accident upon the consideration of which reasonable men might differ, the assured clear distance rule should be determined by the jury."

In the case before us, the defendants made the same arguments to the jury and failed to convince the trier of fact that at the time the tractor trailer improperly entered the plaintiff's lane of traffic, the time and distance between the two vehicles was such that it would have enabled the plaintiff to avoid a collision if he was not traveling at an excessive rate of speed.

The defendant further contends that the court's instruction: "If you find the truck entered the plaintiff's lane of travel after the plaintiff emerged from the curve, you should not apply the assured clear distance rule" was error. Recently, the United States court of appeals for the third circuit in Greene v. Morrelli, 463 F.2d 725 (1972), had the opportunity to examine the application of Pennsylvania law with respect to the assured clear distance rule in an intersectional accident. The court refused to find the driver who approached an in-

---

1. 75 P.S. § 1014(b).

tersection with the right-of-way contributorily negligent as a matter of law, for having violated the assured clear distance rule, when such driver collided with a vehicle which had entered its lane of travel from a perpendicular street at the intersection. The court stated that the failure to anticipate negligence is not negligence. Similarly, in Fleishman v. City of Reading, 388 Pa. 183, 130 A. 2d 429 (1957), where a truck pulled into the plaintiff's lane of travel the court refused to find a violation of the assured clear distance rule. In so doing the court stated:

"[Plaintiff] did have an assured clear distance ahead of him even when he saw the light on the defendant's truck 100 feet away. It was only when the truck moved into the plaintiff's path of travel, that the assured clear distance became un-assured."

Earlier the court in *Fleishman* stated: "Assured clear distance does not include a situation where a vehicle is ambushed in the shadows of other parked cars and then, without warning, charges into the street." In this case the plaintiff could not see the truck until he came out of the curve. At that time his speed was 30 miles an hour and the defendant's truck was not yet on the road. The plaintiff could have stopped within the assured clear distance ahead. It was the negligence of the defendant in proceeding across the road from the private drive in violation of the vehicle code which shortened the distance within which the plaintiff had to stop. This reduction of the stopping distance is the same as that in *Fleishman* and thereby takes such situations outside of the assured clear distance rule.

In applying the assured clear distance rule, the cases are uniform in that there is a distinction between a collision with a fixed object and a moving object. *See* Haines v. Dulaney, 424 Pa. 608, 227 A. 2d 625 (1967) and Long v. Pennsylvania Truck Lines, 335 Pa. 236, 5 A.2d 224 (1939). Such a distinction is of course justified because it is entirely reasonable to say that one should not run into a stationary object on the road which is, and has been, in plain view for everyone to see, while it is an entirely different matter when an object suddenly moves into the path of an oncoming vehicle. The jury was instructed that if they should find that the truck was in a substantially fixed position, blocking the plaintiff's lane of travel, they should apply the assured clear distance rule. Further, the assured clear distance rule requires every vehicle, including the motorcycle, to be kept under control and driven at such speed that could always stop within the distance that its driver could clearly see; that this rule is not altered by curves in the road; that a motorist who drives around a blind curve at a speed in excess of that which would permit it to stop to avoid a collision with a stopped truck is guilty of negligence. Since the jury found that the plaintiff was not contributorily negligent, it would appear that they believed it was the defendant's negligence which shortened the plaintiff's stopping distance thereby making the collision inevitable. Accordingly, we find no reason to disturb the jury's findings.

▇▇▇▇ The defendant claims to be entitled to a new trial because the court failed to permit the defendant's expert to testify as to the speed of the plaintiff's motorcycle. The defendant called Walter VanNess Pruyn, a self-styled [2] "impactologist", to testify as to the speed of Mr. Flick's motorcycle at the

2. During voir dire, the following information was elicited:
Question: What is an impactologist?
Answer: Impactology is the scientific analysis of accidents with all the information, the data available to determine and reconstruct the accident.
Question: Did you create that term or did—

Answer: Yes. It is a registered term.
Question: By "registered", by whom?
Answer: Registered by me in the Patent Office of the United States.
Question: So that this is a designation that you have simply assumed for yourself?
Answer: In connection with my work in the field of accident reconstruction.

time he applied his brakes. The defendant's expert proposed to testify concerning the speed of the motorcycle at the time he applied his brakes. The defendant's expert proposed to testify regarding the speed of the motorcycle by considering the reaction time necessary to apply the brakes and the stopping distances set forth in the Honda Model 300 Owner's Manual.

During voire dire, the witness testified that he had a Bachelor of Science degree in vocational teacher education and mechanical engineering. Work towards this degree included between 30 and 45 semester credits in mechanical engineering, particularly engineering graphics and manufacturing processes. The witness is not a registered professional engineer in Pennsylvania or any other state. The witness' relevant work experience includes teaching physics, automotive design and application in high school; serving as director of an automotive training center; and selling ball bearings and automative parts for the Pruyn Bearing Company, his family's business.

Concerning the witness' experience with motorcycles, the record contains the following:

Question: What is your experience, and please be as brief as you can, or be as long as you want to, but tell us your experience on motorcycles?

Answer: I have ridden motorcycles myself.

The trial judge has broad discretion in the matter of the admission or exclusion of expert evidence. Salem v. United States Lines Co., 370 U.S. 31 at 35, 82 S.Ct. 1119, 8 L.Ed.2d 313 (1962). Clearly the witness' experience in the family business in no way qualified him as an expert in accident reconstruction. Callander v. Hunter Motors Lines, Inc., 327 F.2d 754 (4th Cir. 1964) held a man-

ager of an automotive repair business with 15 years experience is not qualified to testify as to whether certain marks found on a highway after a head-on collision indicated the point of impact absent a showing of independent expertise in accident investigation. Something more than the self-serving statement of a witness is required to qualify him as an expert in the absence of a proven record of achievements in his chosen field. Smith v. Hobart Manufacturing Co., 185 F.Supp. 751 (E.D.Pa.1960). The witness has offered no evidence as to how or where he became an expert in the stopping distances of motorcycles.

The witness proposed to testify regarding the stopping distance and length of skid marks for a motorcycle traveling at 30 miles per hour. In order to do so, he would interpolate the table of stopping distances contained in the owner's manual which included the stopping distance at 35 kilometers per hour (*i.e.* 21 miles per hour). This table did not contain an equivalent distance for 30 miles per hour. The witness testified he could make this calculation from a formula employing velocity and the coefficient of friction. Tables prepared by third parties not present in court have been recognized to be hearsay. Thedorf v. Lipsey, 237 F.2d 190 (7th Cir. 1956). The witness had no knowledge of the coefficient of friction used in creating the table or whether such coefficient was appropriate for the circumstances (*i.e.* road surface, tire wear, etc.) in this case. Accordingly, we cannot say it was error to prohibit the witness' expression of opinion on the plaintiff's speed.

The defendant claims there were two errors with respect to damages which would entitle him to a new trial. He claims it was error to admit into evidence and to instruct the jury in the use of life expectancy tables and present val-

Question: And you have decided that you are qualified to be an impactologist?

Answer: I have registered the name to indicate a special area of expertise in

which I have been working for the last forty years.

[Transcript 10/19/72, p. 157]

ue tables and he further concludes that damages were excessive.

The plaintiff sought and the jury was instructed with respect to damages for past medical expenses, past wage loss, impairment of future earning capacity and pain and suffering. The jury returned a lump sum verdict of $119,000.00 to compensate the plaintiff for all these items.

To assist the jury in arriving at its verdict, they were provided with a life expectancy calculator and a present value calculator. Mortality tables are competent and relevant in negligence cases if death or permanent impairment of earning power results. The plaintiff need not show that he is incapable of performing any kind of work in order to permit such tables to be admitted. City of Philadelphia v. Shapiro, 416 Pa. 308, 206 A.2d 308 (1965).

There is ample evidence of the plaintiff's future disability. There is uncontradicted testimony that the plaintiff's leg will never be normal[3]; that the plaintiff's leg will never be pain free[4]; that the plaintiff would not be able to climb ladders and stand on them for an appreciable length of time without endangering his health[5]; that plaintiff could not climb electrical poles and perform the duties of a lineman in the capacity which he once held.[6] Such evidence clearly shows an impairment of future earning capacity and entitled the jury to use present value and mortality tables in arriving at its verdict. City of Philadelphia v. Shapiro, *supra.* Especially where these tables were accompanied by qualifying instructions,[7] Griest v. Playtown, Inc., 414 Pa. 58, 199 A.2d 131 (1964). Clearly there was no error in admission into evidence of the life expectancy tables.

The defendant further contends that the jury's verdict of $119,-000.00 was excessive. The plaintiff argued to the jury that the defendant was entitled to recover $3,810.45 for medical expenses to date, $17,075.00 for wage loss to date and $84,000.00 for future wage loss. In arriving at the future wage loss, plaintiff's counsel projected the plaintiff's earnings at the $7.20 rate which the plaintiff earned while working for United Engineers. The thrust of the defendant's argument is "one brief experience with earning capacity does not establish earning power". The loss of earning capacity need not be established by showing the change in earnings before and after the injury. The fact that earnings have increased after an injury does not bar recovery for impairment of earning capacity. Martin v. Philadelphia Suburban Transportation Co., 435 Pa. 391, 257 A.2d 535 (1969). "With respect to loss of earning capacity as distinguished from loss of earnings, past earnings are only one of the factors to be taken into consideration . . . and may be determined even in the absence of testimony as to the plaintiff's earnings prior to the accident." Hrabak v. Hummel, 55 F. Supp. 775 (E.D.Pa.1943). Therefore we cannot say that the jury could not consider the evidence adduced by the plaintiff, the earned $7.20 an hour, in reaching its verdict as to the loss of future earning capacity.

Further, it should be noted that the jury returned a single verdict in the amount of $119,000.00, which was not broken down into the specific elements of damages. While plaintiff's counsel argued for some $20,000.00 for past wage loss and past medical expenses, assuming that these were awarded by the jury, this would leave $99,000.00 for impairment of future earning power and pain and suffering. We cannot tell whether the jury computed the impairment of future earning capacity using

---

3. Transcript, p. 390

4. Transcript, p. 390

5. Transcript, p. 391

6. Transcript, p. 391

7. Transcript, p. 461 "If you should find the evidence in this case establishes a reasonable likelihood of loss of future earnings . . ." p. 464 "Should you find any permanent future annual loss . . . ."

the $7.20 rate, or whether they used a lesser figure and awarded a greater amount for pain and suffering. A large award for pain and suffering is not wholly unreasonable in light of the facts that: there was unequivocal evidence of a non-union of the plaintiff's tibia, which existed for several years; the plaintiff wore a leg brace for some three years since the accident and will probably be required to wear it for at least another year; the most favorable prognosis would still leave the plaintiff with one leg shorter than the other; his leg will never be pain-free; the plaintiff wore a long leg cast for about four months followed by a shorter leg cast for another four months; since the accident, the plaintiff has not experienced one week when he was completely free of pain; and his leg pains have been so intense that he has been unable to sleep at times during the past several years.

Accordingly, we are unable to say that the jury's verdict was excessive. The defendant has raised several other issues. After examining each of these in detail, we have found them to be without merit and feel no purpose would be served by discussing them at length. The defendant's motions for judgment N.O.V. and/or new trial are therefore denied.