Lorelei A. STEPHENSON, a minor, et al.,
Plaintiffs,

v.

COLLEGE MISERICORDIA et al.,
Defendants.

Civ. No. 73–113.

United States District Court,
M. D. Pennsylvania.

March 6, 1974.

Edward Darling, John J. Aponick, Jr., Wilkes-Barre, Pa., for plaintiffs.

Joseph E. Gallagher, Scranton, Pa., for defendant College Misericordia.

John R. Lenahan, Scranton, Pa., for defendants Highland Acres Equestrian Center, Inc. and Mrs. H. Bogdon.

## OPINION

MUIR, District Judge.

### I. Introduction

The Court submitted a special verdict to the jury containing 10 questions.

The jurors could agree only to answers to three of them. One of such answers found that the Plaintiff had assumed the risk of injury. Another answer found the Plaintiff free of contributory negligence. The Court then entered judgment in favor of the Defendants. The Plaintiff moved for a new trial. One of the Defendants has moved for a directed verdict in the event Plaintiff's motion is granted.

The Plaintiff, Lorelei Stephenson, while a student at College Misericordia, in Dallas, Pennsylvania, elected to take a course in horseback riding at Highland Acres Equestrian Center in order to fulfill the College's physical education requirements. During the course of instruction, the Plaintiff fell from a horse and sustained an injury to her left elbow. The riding instruction was given by Mrs. H. Bogdon, an officer of the Highland Acres Corporation.

The issues to which the new trial motion is addressed are Plaintiff's alleged assumption of the risk [1] and contributory negligence.[2]

## QUESTIONS PRESENTED BY PLAINTIFF'S MOTION FOR A NEW TRIAL

1. Should consideration of Plaintiff's assumption of the risk have been allowed to go to the jury?

2. Were the answers of the jury respecting Plaintiff's conduct inconsistent with each other in view of the Court's charge to the jury?

## II. Discussion.

■ The Plaintiff did not object to the Court's charge on assumption of the risk or to the question submitted to the jury.[3] During its deliberations, the court at the jury's request re-read the charge on assumption of risk. At no time during the trial did counsel for the Plaintiff object to the language of the charge on assumption of risk. Absent "fundamental" and "highly prejudicial" error, an unobjected to charge may not be attacked on a motion for new trial. Harkins v. Ford Motor Co., 437 F.2d 276, 278 (3d Cir. 1970). An instruction on the law which is not warranted by the facts must also be objected to, or the objection is waived. Flick v. James Montfredo, 356 F.Supp. 1143, 1147 (E. D.Pa.1973). A new trial will be granted, where there has been a failure to adhere to the rule, if "the Court's charge was totally inadequate to provide even the barest legal guideposts to aid the jury in rationally reaching a decision." McNello v. Kelly, 283 F.2d 96, 102 (3d Cir. 1960). That is not the case here. Plaintiff is now foreclosed from raising an issue over the submission of the assumption of the risk defense to the jury.

At the time of the trial, none of the counsel or the court realized that the assumption of the risk portion of the charge overlapped the definition given for contributory negligence,[4] and that

---

1. Question # 8: "Did Lorelei Stephenson assume the risk of a fall from a horse and consequent injury when she took riding instruction?"
 "Answer: Yes"

2. Question #9: "Was Lorelei Stephenson negligent on February 24, 1971?"
 "Answer: No"

3. Fed.R.Civ.Proc. 51 states, in part:
 "No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict . . .."

4. On assumption of the risk the Court charged, in part:

"A person assumes the risk when he is aware of the danger but knowingly, deliberately and unreasonably chooses to take his chances. This is a subjective standard— what the particular person in fact knew, saw, understood and appreciated. The basis of assumption of risk is voluntary, considered and unreasonable consent to accept a risk, to chance a danger. This is a different doctrine than the doctrine of negligence. Negligence is the failure to exercise the care which a reasonable and prudent man would exercise under all the circumstances."
The contributory negligence instruction said:
"In addition to denying that any negligence of the defendant proximately caused any in-

the questions given to the jury were hence susceptible of inconsistent answers. Rule 49(a) relating to special verdicts does not contain any reference to inconsistent answers although Rule 49(b) relating to a general verdict accompanied by answers to interrogatories covers the point.

■ Despite the silence of Rule 49(a) on inconsistent answers, it is my view that Plaintiff should not be prevented from challenging inconsistent findings of the jury.

■ The Plaintiff was a college student of obvious intelligence and awareness. She had been on a horse prior to this accident. The Plaintiff's own expert testified that " . . . everyone who takes riding lessons is practically guaranteed to fall at least once." On the basis of the facts adduced at trial, the jury could easily conclude that the Plaintiff was aware of the danger of a fall from a horse and that she voluntarily accepted the risk when she took riding instructions. See Green v. Philadelphia Gas Works, 333 F.Supp. 1398 (E. D.Pa.1971). In affirming the Green decision, the Court of Appeals said: "[t]he cases emphasize that the jury is to apply its own common sense when knowledge of a risk is widely known and appreciated." Green v. Parisi, 478 F.2d 313, 317 (3d Cir. 1973).

The Plaintiff reasons that under the instruction given there could not be a finding that the Plaintiff was free of negligence while at the same time assuming the risk.

■ The Pennsylvania law governing in this diversity action recognizes two forms of assumption of the risk. In its so-called "primary and strict sense," assumption of the risk comprehends a "voluntary exposure to a known or obvious danger which negates liability of the Defendants." Assumption of the risk in its secondary sense "involves a failure to exercise reasonable care for . . . [his] safety." [5] The secondary type of assumption of the risk is said to be "synonymous with contributory negligence." Pritchard v. Liggett and Myers Tobacco Co., *supra*; Elder v. Crawley Book Machinery Company, 441 F.2d 771, 773 (3d Cir. 1971).

■ A plaintiff, in assuming a risk, may be acting unreasonably or reasonably. Prosser, Law of Torts, 3d Ed. § 67. In instructing the jury that the Plaintiff must be acting "unreasonably" in order to assume a risk, the Court utilized the type of assumption of risk included within the definition of contributory negligence. Elder v. Crawley, *supra*. In other words, when a Plaintiff acts voluntarily and unreasonably in consenting to hazard a danger, he is likewise violating the standard of the ordinarily prudent man in the Plaintiff's circumstances. See Restatement, Torts 2d § 406A(d).

■ Pennsylvania takes the progressive attitude that because of the overlap in concepts, assumption of the risk in its secondary sense should be merged into the definition of contributory negligence avoiding the use of the term assumption of the risk altogether. Joyce v. Quinn, 204 Pa.Super. 580, 587, 588, 205 A.2d 611 (1964). See also, Skoda v. West Penn Power Company, 411 Pa. 323, 191 A.2d 822 (1963) and Kuchinic v. McCrory, 439 Pa. 314, 266 A.2d 723 (1970).

jury to the plaintiff, the defendant alleges that some contributory negligence on the part of the Plaintiff, was a proximate cause of any injuries and consequent damages plaintiff may have sustained. Contributory negligence is fault on the part of a plaintiff which cooperates in some degree with the negligence of another, and so helps to bring about the injury.

"By the defense of contributory negligence, the defendant in effect alleges that, even though the defendant may have been guilty of some negligent act or omission which was one of the proximate causes, the plaintiff by her own failure to use ordinary care under the circumstances for her own safety, at the time and place in question, also contributed one of the proximate causes of the injuries and damages plaintiff may have suffered."

5. Pritchard v. Liggett and Myers Tobacco Company, 350 F.2d 479, 484 (3d Cir. 1965).

■ The charge given on assumption of risk actually was too favorable to the Plaintiff because it required the jury to find unreasonable conduct by the Plaintiff in determining that she assumed the risk. Thus, the jury found the Plaintiff to have acted unreasonably under the assumption of risk question but to have acted reasonably under the contributory negligence question. In a new trial with a revised charge, Plaintiff may be less likely to secure a favorable verdict. Nevertheless, I cannot say that an inconsistent verdict is "harmless error." Fed.R.Civ.Proc. 61.

A new trial will be granted to the Plaintiff.

We turn now to the motion by the College for a directed verdict. Two questions are presented by the motion:

(1) Based upon the evidence at trial, could a reasonable jury find the College to be vicariously liable for the asserted negligence of the riding academy, and

(2) Could such a jury find the College to be negligent for failing to obtain a lesson plan from the riding academy and, if so, was such negligence a proximate cause of Plaintiff's fall and her resultant injuries.

The jury did not answer the questions posed to it with respect to the relationship between the College and the other Defendants[6] and with respect to the College's own negligence for not obtaining a lesson plan from the stable.[7]

The Defendant College must prevail on both of the above questions.

■ Vicarious liability in tort arises in a master-servant relationship and in certain types of agency situations.

Mrs. Bogdon and the Highland Center were not employees of the College. There was absolutely no evidence at trial upon which a reasonable person could find that the College had the right to "control" either the "result of the work" or "the way in which it shall be done." Johnson v. Angretti, 364 Pa. 602, 607, 73 A.2d 666, 669 (1950).

■ The Johnson case utilizes the Restatement, Agency 2d § 220(a)[8] criteria as to when a master-servant relationship arises. As one can easily see, none of the Restatement's tests are met:

(1) The College had no right to control the details of the riding academy's work;

(2) the stable was engaged in a distinct business from that of the College;

(3) there was no evidence on the usual practice in this field;

---

6. Question #3: "Was Mrs. Bogdon or Highland Equestrian Center, Inc., or both, an agent or agents of the College on February 24, 1971?"

7. Question #6: "Was the college negligent in failing to secure from the other Defendants and examine a statement of the course of instruction on riding which was to be given the students?"

8. "220. Definition of Servant
(1) A servant is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control.
(2) In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, among others, are considered:
(a) the extent of control which, by the agreement, the master may exercise over the details of the work;
(b) whether or not the one employed is engaged in a distinct occupation or business;
(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
(d) the skill required in the particular occupation;
(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
(f) the length of time for which the person is employed;
(g) the method of payment, whether by the time or by the job;
(h) whether or not the work is a part of the regular business of the employer;
(i) whether or not the parties believe they are creating the relation of master and servant; and
(j) whether the principal is or is not in business."

(4) skill is required in teaching horseback riding and that skill was possessed by the stable and its employees exclusively;

(5) the riding academy supplied all its own personnel and equipment;

(6) there was no evidence on the duration of the academy's relationship with the College;

(7) payment was made directly to the stable by the Plaintiff, with the College receiving no part of it;

(8) the work of the stable is not a part of the regular business of the College;

(9) the stable was considered by its operators as an independent contractor from all indications; and

(10) the College and the stable is each in its own independent business.

 The Plaintiff places great stress on the theory that vicarious liability in tort attaches to the College for the stable's actions because it had the "right to control" the stable's performance. However, the "right to control" exercisable by the principal must be the right to control the "details" of the agent's "physical conduct." Smalich v. Westfall, 440 Pa. 409 (1970). Under no reading of the testimony in this case could it be said that the College had this right over the Equestrian Center.

 Even in circumstances where a master-servant relationship does not exist, an agency relationship may give rise to vicarious liability on the part of the principal for the torts of the agent. Smalich v. Westfall, 440 Pa. 409, 269 A.2d 476 (1970) citing Restatement, Agency 2d § 250.[9] The Plaintiff has never maintained that the College "intended" or "authorized" Lorelei Stephenson's fall. Restatement, *supra*. Furthermore, the trial was devoid of any evidence that the College was on notice or should have been on notice of a negligent performance by Mrs. Bogdon. Restatement, *supra*. The College's actions do not fall within the orbit of the language quoted in footnote 9.

 The only evidence bearing on the lesson plan issue dealt with the manner in which the College approved the use of the riding academy as the place where its students could take riding instructions. The approval came after a visit to the Center by one of the College's officials. In any event, Plaintiff seems to agree that the Center was "generally competent." [10] The Plaintiff introduced no evidence on lesson plans on the College level or what they would contain in circumstances akin to those in the instant case. The Plaintiff did not attempt to prove that the contents of a lesson plan could have had any foreseeable relationship to the prevention of Plaintiff's fall or the prevention of her resulting injury. No reasonable jury could have found a foreseeable relationship under the evidence at trial.

A directed verdict will be entered in favor of the Defendant, College Misericordia.

9. "§ 250. Non-liability for Physical Harm by Non-Servant Agents

"A principal is not liable for physical harm caused by the negligent physical conduct of a non-servant agent during the performance of the principal's business, if he neither intended nor authorized the result nor the manner of performance, unless he was under a duty to have the act performed with due care."

10. Though an apparent typing error makes page 3 of Plaintiff's "Brief in Opposition to Judgment . . . ." difficult to read, we can infer Plaintiff's acquiescence in the phrase quoted.