Peter SMITH, Appellant,

v.

SEVEN SPRINGS FARM, INC., t/d/b/a Seven Springs Ski Resort.

No. 82–5691.

United States Court of Appeals, Third Circuit.

Argued Aug. 8, 1983.
Decided Sept. 12, 1983.

---

Allen L. Rothenberg, Marc Weinberg (argued), Ezra Wohlgelernter, Philadelphia, Pa., for appellant.

Gerard J. Cipriani (argued), Murovich, Reale, Fossee & Ferry, P.C., Pittsburgh, Pa., for appellee.

Before ALDISERT and WEIS, Circuit Judges, and RE, Chief Judge.*

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

This diversity case, governed by Pennsylvania law, asks us to interpret the Pennsylvania Skier's Responsibility Act, 42 Pa. Cons.Stat.Ann. § 7102 (Purdon Supp.1982), to decide whether appellant Peter Smith assumed the risk of skiing injuries sustained at Seven Springs Ski Resort so as to discharge the resort from its duty of care and preclude a finding that it was negligent. The district court found that Smith assumed the risk as a matter of law and granted summary judgment in favor of Seven Springs. We affirm.

### I.

Appellant Peter Smith is no novice to the sport of downhill skiing. He has skied for over thirteen years and characterizes himself as an advanced intermediate skier.

On February 2, 1980, Smith skied at Seven Springs for the first time. He went to the top of the mountain to ski the North Face, a trail that consists of two short, gentle slopes, one at the top of the mountain and one at the bottom with a steep headwall in between. A sign is posted at the beginning of the trail displaying the international skiing symbol of a black diamond below which are printed the words "MOST DIFFICULT." Heeding the sign and deciding not to take a less difficult trail that branches off to the side at the top of the mountain, Smith began his descent down North Face. As he approached the headwall, he stated that he was aware that the headwall was icy and that skiers ahead of him were having trouble negotiating its steep slope.[1] He also stated that he was aware that a series of unprotected telephone-like poles, part of the resort's snowmaking apparatus, lined the center of the headwall.[2]

These conditions, however, did not prompt Smith to change course. Although he had the option to stop, turn around, and side-step back uphill to a gentler slope, he instead proceeded to traverse the headwall. Seconds later, he encountered the icy conditions and attempted to move to the center of the slope, toward the snowmaking apparatus, in search of less icy terrain. The

---

* Honorable Edward D. Re, Chief Judge of the United States Court of International Trade, sitting by designation.

1. In his deposition, Smith testified:
   Q. When you got closer [to the headwall] you saw and heard people, I believe you said, having problems.
   A. What I interpreted as people in trouble, not skiing, having problems.
   Q. What do you mean by that exactly? What type of problems?
   A. People falling.
   Q. What did you hear?
   A. You could hear the chatter of somebody falling.
   Q. Chatter on soft snow?
   A. No.
   Q. Chatter on what?
   A. Ice.
   Q. Before you actually started down the steepest part of the slope then you saw and heard people negotiating on an icy slope, correct?
   A. My interpretation was that they were people who were not negotiating a slope very well.
   Q. Before you started going down you knew that the slope was icy?
   A. Yes.

   Q. And that it was causing problems and causing people to have problems while skiing?
   A. That was my interpretation.
   App. at 42a–43a.

2. Again, in his deposition, Smith testified:
   Q. Were you able to see the telephone pole and snow making apparatus? Was there anything blocking your view?
   A. To the best of my recollection I could not see the pole that I struck.
   Q. The poles go right to the top of the headwall, correct?
   A. Yes.
   Q. Why don't you tell me how many poles you were able to see from your vantage point before you began having any problems, at the time you were aware that there was at least some ice on that slope. Approximately how many did you see?
   A. Probably eight approximately.
   Q. Did any of those poles have any type of protective covering on them, hay bales?
   A. Not that I recall.
   App. at 47a–48a.

maneuver was unsuccessful. He fell, lost his skis, and slid into one of the telephone-like poles and two nearby snowmaking pipes. As a result, he sustained serious and permanent injuries to his right knee.

Smith brought the present negligence action seeking to recover for his injuries. The district court, relying in part on the Pennsylvania Skier's Responsibility Act, 42 Pa. Cons.Stat.Ann. § 7102(c) (Purdon Supp. 1982), ruled against him in summary judgment, concluding that, as a matter of law, he had assumed the risk of injury so as to discharge Seven Springs from its duty of care. Smith appeals, contending: (1) that the district court erred in its interpretation of Pennsylvania law and thereby erroneously defined the applicable doctrine of assumption of risk;[3] and (2) that it was improper for the court to grant summary judgment when material facts as to his knowledge, appreciation, and voluntary acceptance of the risk remained in dispute. As to his first contention, our review is plenary. *Universal Minerals, Inc. v. C.A. Hughes & Co.,* 669 F.2d 98, 103 (3d Cir. 1981). As to his second, we must view the evidence in a light most favorable to appellant and only uphold the district court's ruling if we find that there was no genuine issue of material fact and that the movant was entitled to judgment as a matter of law. *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir.1976).

## II.

The law of assumption of risk, generally, is not free from confusion. Pennsylvania law is no exception. The complexity of the doctrine and the consequent difficulty of its application are well illustrated by three disparate meanings given the term by the courts:

> In its simplest form, assumption of risk means that the plaintiff has given his express consent to relieve the defendant of an obligation to exercise care for his

protection, and agrees to take his chances as to injury from a known or possible risk. . . .

> A second, and closely related, meaning is that the plaintiff has entered voluntarily into some relation with the defendant which he knows to involve the risk . . . .

> In a third type of situation the plaintiff, aware of a risk created by the negligence of the defendant, proceeds or continues voluntarily to encounter it.

. . . . .

Restatement (Second) of Torts § 496A comment c (1965).

For our purposes, however, we believe these three situations give rise to two types of assumption of risk defenses. It may be that plaintiff's conduct in voluntarily encountering a known risk was reasonable. If so, the defense of assumption of risk in its primary sense operates to deny the defendant's negligence by denying the duty of care element of that offense; plaintiff does not recover because defendant's conduct is not a legal wrong as to him. *See Pritchard v. Liggett & Myers Tobacco Co.,* 350 F.2d 479, 484 (3d Cir.1965) (smoking cigarettes), *cert. denied,* 382 U.S. 987, 86 S.Ct. 549, 15 L.Ed.2d 475 (1966); *Elliott v. Philadelphia Transportation Co.,* 160 Pa.Super. 291, 294, 50 A.2d 537, 539 (1947); Prosser, Law of Torts § 68, at 440 (4th ed. 1971). But if plaintiff's conduct was *unreasonable,* the defense of assumption of risk in its secondary sense operates to bar his recovery for two reasons—because he implicitly consented to accept the risk, and on the policy grounds that it would be inappropriate to impose on the defendant a loss for which plaintiff's own negligence was in part responsible. *See Pritchard,* 350 F.2d at 484; *Stephenson v. College Misericordia,* 376 F.Supp. 1324 (M.D.Pa.1974); Restatement (Second) of Torts § 496A comment c(4) (1965).

---

**3.** This contention is couched in a broader assertion by appellant that the district court abused its discretion in adopting Seven Springs' brief in support of summary judgment as its opinion below. We decline to say that the district court's method of stating reasons for its decision here constitutes an abuse of discretion, particularly when appellant's objection is to the brief's content.

In its secondary sense, therefore, the defense of assumption of risk overlaps with the defense of contributory negligence. *Elliott,* 160 Pa.Super. at 294–95, 50 A.2d at 539.

> Where [these defenses] have been distinguished, the traditional basis has been that assumption of risk is a matter of knowledge of the danger and intelligent acquiescence in it, while contributory negligence is a matter of some fault or departure from the standard of conduct of the reasonable man, however unaware, unwilling, or even protesting the plaintiff may be. Obviously the two may co-exist, when the plaintiff makes an unreasonable choice to incur the risk; but either may exist without the other. The significant difference, when there is one, is likely *to* be one between risks which were *in fact* known to the plaintiff and risks which he merely *might have discovered* by the exercise of ordinary care.

Prosser, Law of Torts § 68, at 441 (4th ed. 1971) (emphasis added); *see also Koshorek v. Pennsylvania Railroad Co.,* 318 F.2d 364, 367 (3d Cir.1963).

■ Thus, if a distinction must be made, it is that assumption of risk involves the meeting of a subjectively known risk, whereas contributory negligence may involve the plaintiff exposing himself to a danger of which he was subjectively unaware but which would have been apparent had he used due care. With the former, plaintiff's conduct may be quite reasonable because its advantages outweigh its risks; but regardless, if plaintiff is injured, defendant is not liable. With the latter, plaintiff's conduct may be considered in itself unreasonable; if plaintiff is injured, he is barred from recovering because of his failure to exercise due care.

### III.

In the past, there was no need to distinguish among the defenses of assumption of risk in its primary sense, assumption of risk in its secondary sense, and contributory negligence; each defense, if successfully asserted, would have barred plaintiff's recovery for negligence. With the enactment of Pennsylvania's comparative negligence statute, however, the previously blurred distinctions among the defenses acquired renewed significance. That statute provides:

(a) General rule.—

In all actions brought to recover damages for negligence resulting in death or injury to person or property, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery by the plaintiff or his legal representative where such negligence was not greater than the causal negligence of the defendant or defendants against whom recovery is sought, but any damages sustained by the plaintiff shall be diminished in proportion to the amount of negligence attributed to the plaintiff.

(b) Recovery against joint defendant; contribution.—

Where recovery is allowed against more than one defendant, each defendant shall be liable for that proportion of the total dollar amount awarded as damages in the ratio of the amount of his causal negligence to the amount of causal negligence attributed to all defendants against whom recovery is allowed. The plaintiff may recover the full amount of the allowed recovery from any defendant against whom the plaintiff is not barred from recovery. Any defendant who is so compelled to pay more than his percentage share may seek contribution.

(c) *Downhill Skiing.—*

(1) The General Assembly finds that the sport of downhill skiing is practiced by a large number of citizens of this Commonwealth and also attracts to this Commonwealth large numbers of nonresidents significantly contributing to the economy of this Commonwealth. It is recognized that as in some other sports, there are inherent risks in the sport of downhill skiing.

(2) *The doctrine of voluntary assumption of risk as it applies to downhill skiing injuries and damages is not modified by subsections (a) and (b).*

42 Pa.Cons.Stat.Ann. § 7102 (Purdon Supp. 1982) (emphasis added).

Subsections (a) and (b) of § 7102, collectively referred to as the Comparative Negligence Act, remove the absolute bar to recovery imposed by the doctrine of contributory negligence and replace it with a system of recovery based on comparative fault. Section 7102(c), referred to as the Skier's Responsibility Act, was passed in 1980 as an amendment to the Comparative Negligence Act. It preserves assumption of risk as a defense to negligence suits stemming from downhill skiing injuries.

The overall focus of § 7102 is to abolish the defense of contributory negligence in favor of a system of comparative negligence. But the statute manifests a specific intent on the part of the Pennsylvania legislature, in § 7102(c), to preserve the defense of assumption of risk in downhill skiing cases. We must determine, therefore, what effect, if any, the move to a system based on comparative fault has had on the assumption of risk defense preserved by the downhill skiing amendment. Specifically, we must decide whether the amendment contemplates the continued availability of both the defense of assumption of risk in its primary sense and the defense of assumption of risk in its secondary sense.

### A.

As we see it, there are two possible ways to interpret the downhill skiing amendment: (1) it can be read to save only the assumption of risk defenses that do not overlap with the defense of contributory negligence that was abolished under § 7102(a) and (b); or (2) it can be read to save all defenses of assumption of risk. Under the former interpretation, only the defense of assumption of risk in its primary sense would survive. Under the latter, both the defense of assumption of risk in its primary sense and the defense of assumption of risk in its secondary sense would survive.

Although we realize that the Pennsylvania courts have neither addressed nor resolved this question of interpretation, two considerations prompt us to read § 7102(c) in the former, more restrictive sense. First, interpreting subsection (c) to preserve the defense of assumption of risk in its secondary sense would lead to anomalous results. For example, if defendant succeeded with a defense of assumption of risk in its secondary sense, plaintiff would be barred from recovery; if he succeeded instead with a contributory negligence defense, plaintiff's recovery would be diminished only in proportion to his fault, as long as his negligence was not greater than the causal negligence of defendant. Second, prior to the adoption of the comparative negligence statute, courts interpreting Pennsylvania tort law had already begun to merge the defense of assumption of risk in its secondary sense with the defense of contributory negligence, see *Stephenson v. College Misericordia,* 376 F.Supp. 1324 (M.D.Pa.1974); *Joyce v. Quinn,* 204 Pa.Super. 580, 205 A.2d 611 (1964), while preserving assumption of risk in its primary sense as a separate and distinct defense, see *Henrich v. Cutler Hammer Co.,* 460 F.2d 1325 (3d Cir.1972); *Elder v. Crawley Book Machinery Co.,* 441 F.2d 771 (3d Cir.1971); *McCown v. International Harvester Co.,* 463 Pa. 13, 342 A.2d 381 (1975). To prevent potentially anomalous results and further the merger already begun at common law, we therefore read § 7102(c) to preserve only the defense of assumption of risk in its primary sense in downhill skiing cases.[4]

---

**4.** We stress, however, that our interpretation of § 7102(c) is not a holding of this court, as it is not necessary to support our disposition of this appeal. Because we conclude that Smith assumed the risk in its primary sense, the result would be the same if the Pennsylvania Supreme Court were later to conclude, notwithstanding the anomalies that would result and the previous merger of the defense of assumption of risk in its secondary sense with the defense of contributory negligence at common law, that subsection (c) contemplates the availability of the defense of assumption of risk in both of its senses. For our purposes, we presume the more restrictive reading to demonstrate that, even under it, Smith's claim may not be sustained.

### B.

Our interpretation of § 7102(c) is meaningless, however, unless we find that the defense of assumption of risk in its primary sense is still available under Pennsylvania common law. This is a question we have discussed before.

In *Rutter v. Northeastern Beaver County School District*, 496 Pa. 590, 612, 437 A.2d 1198, 1209 (1981), a plurality of the Pennsylvania Supreme Court purported, in dicta, to abolish the doctrine of assumption of risk altogether, reasoning that it was duplicative of the more widely understood concepts of negligence and contributory negligence. We rejected this view in *Vargus v. Pitman Manufacturing Co.*, 675 F.2d 73 (3d Cir. 1982), noting that *Rutter* could not be authority for the abolition of the doctrine of assumption of risk without the support of a majority of the court.

Even if we had viewed *Rutter* as abolishing the common law doctrine of assumption of risk in Pennsylvania, however, this case would not come within the terms of that abolition. The *Rutter* plurality sought to abolish the doctrine "except where specifically preserved by statute." 496 Pa. at 613, 437 A.2d at 1209. As § 7102(c) specifically preserves assumption of risk as a defense to negligence in downhill skiing cases, the defense survives, even in the eyes of the *Rutter* plurality.

In addition, the district court in *Vargus v. Pitman Manufacturing Co.*, 510 F.Supp. 116 (E.D.Pa.1981), *aff'd on reh'g*, 675 F.2d 73 (3d Cir.1982), ruled that Pennsylvania's Comparative Negligence Act does not preclude the survival of the defense of assumption of risk in its primary sense. It reasoned that because the Pennsylvania courts had already merged the defense of assumption of risk in its secondary sense with the defense of contributory negligence, the legislature's abolition of the latter defense through the enactment of § 7102(a) and (b) implicitly abolished the former defense. *Id.* at 118. It further reasoned that this abolition did not encompass the defense of assumption of risk in its primary sense because that defense does not concern fault-based liability. *Id.* at 118–20. We implicitly adopted this reasoning when we affirmed the district court's decision. *See Vargus v. Pitman Manufacturing Co.*, 675 F.2d 73 (3d Cir.1982), *aff'd on reh'g*, 510 F.Supp. 116 (E.D.Pa.1981); *cf. Keegan v. Anchor Inns, Inc.*, 606 F.2d 35 (3d Cir.1979) (reaching same conclusion as court in *Vargus* under Virgin Islands comparative negligence statute). Thus, in our view, the defense of assumption of risk, at least in its primary sense, is still alive in Pennsylvania.

### IV.

With this evolutionary history of Pennsylvania's doctrine of assumption of risk in mind, we return to interpret § 7102(c). We find, consonant with Pennsylvania state law, that the downhill skiing amendment contemplates the continued availability of the defense of assumption of risk in its primary sense. Because this particular defense survived the statutory adoption of the comparative negligence doctrine and can be asserted by defendants regardless of the nature of the injury giving rise to the negligence action against them, *see Vargus v. Pitman Manufacturing Co.*, 510 F.Supp. 116 (E.D.Pa.1981), *aff'd on reh'g*, 675 F.2d 73 (3d Cir.1982), we assume that it is also available to defendants answering negligence suits involving downhill skiing injuries under § 7102(c). We now proceed to explicate fully the elements of the defense of assumption of risk in its primary sense and apply it to the facts before us.

### A.

As set forth in part II, *supra*, assumption of risk in its primary sense is a defense that negates the defendant's duty of care. Here, plaintiff seeks to construct a prima facie case of duty owed to him by the defendant. Prosser, Law of Torts § 68, at 455 (4th ed. 1971). Defendant then has the burden of demonstrating that no duty was owed plaintiff. Restatement (Second) of Torts § 496G (1965). Defendant can sustain its burden by proving that plaintiff knew of the risk, appreciated its character, and voluntarily chose to accept it. *Jones v.*

*Three Rivers Management Corp.,* 483 Pa. 75, 88, 394 A.2d 546, 552–53 (1978). The standard to determine whether assumption of the risk existed is essentially subjective. *Weaver v. Clabaugh,* 255 Pa.Super. 532, 536, 388 A.2d 1094, 1096 (1978). It differs, therefore, from the objective "reasonable person" standard applied in contributory negligence cases. *Dorsey v. The Yoder Co.,* 331 F.Supp. 753, 765 (E.D.Pa.1971) (citing Restatement (Second) of Torts § 496D comment c (1965)). If by reason of age, or lack of information, experience, intelligence, or judgment, plaintiff did not understand the risk involved in a known situation, he will not be taken to have assumed the risk. *Id.* at 765–66. Likewise, if plaintiff's words or conduct make it clear that he did not willingly accept the risk, the absence of voluntariness will preclude a finding of assumption of risk. *McIntyre v. Cusick,* 247 Pa.Super. 354, 360, 372 A.2d 864, 867 (1977). Finally, defendant must show that plaintiff's conduct in knowingly and voluntarily confronting the risk was reasonable. Prosser, Law of Torts § 68, at 440 (4th ed. 1971). Although the existence of knowledge, voluntariness, and reasonableness are usually questions of fact for the jury, *id.* at 455, where reasonable persons could not differ as to the conclusion, the issue may be decided by the court. *See Spanoudakis v. Aluminum Co. of America,* 401 Pa. 460, 165 A.2d 241 (1960); Restatement (Second) of Torts § 496D comment e (1965).

### B.

Smith contends that Seven Springs owed him the duty of care that a business invitor owes a business invitee: "not only the duty not to injure him by unreasonably dangerous conduct while he is upon the premises, but also the affirmative duty to use reasonable care to discover unreasonably dangerous conditions of the premises and either put the premises in a reasonably safe condition for use in a manner consistent with the purpose of the invitation or warn him of the danger." *Andrasko v. Chamberlain Manufacturing Corp.,* 608 F.2d 944, 945 (3d Cir. 1979); *Crotty v. Reading Industries, Inc.,* 237 Pa.Super. 1, 8, 345 A.2d 259, 263 (1975).

Specifically, Smith argues that Seven Springs had a two-fold duty: (1) to warn him of the hazardous conditions on North Face; and (2) to place protective padding around the snowmaking apparatus to guard him against collision injuries.

Smith's own deposition, however, provided the district court with all the information it needed to conclude that, as a matter of law, Smith assumed the risk of injury and thereby discharged Seven Springs from any duty of care to him. Smith's testimony shows that he subjectively appreciated the risks of skiing North Face and voluntarily chose to confront them. Before descending the headwall, he knew that North Face was marked with the international symbol designating it one of the most difficult slopes at Seven Springs, that people ahead of him were having trouble negotiating its steep icy slope, and that unprotected telephone-like poles that were part of the resort's snowmaking apparatus lined the center of the headwall. Nevertheless, he voluntarily made the descent. Rather than stop, side-step back uphill to a gentler slope that branched off from North Face, or side-step down the slope to safety, he took his chances. Such action, although confronting a known risk, was probably quite reasonable in light of his extensive skiing experience and ability. But in electing to pursue that course, Smith absolved defendant of any obligation to exercise care for his protection.

Neither party presented evidence to contradict Smith's testimony. Giving his testimony the maximum consideration as we must do in a summary judgment context, there was nothing further for a fact-finder to construe in Smith's favor to overcome the damage done by his own statements. We conclude, therefore, that reasonable minds could not differ over the question of assumption of risk presented. Accordingly, we uphold the district court's summary judgment ruling in favor of Seven Springs.

### V.

The judgment of the district court will be affirmed.