**Sheila O'Malley BURKE,
Plaintiff–Appellant,**

v.

**SKI AMERICA, INCORPORATED, formerly Ski–Roundtop, Incorporated, t/a Ski Roundtop, Defendant–Appellee.**

**No. 90–1477.**

United States Court of Appeals,
Fourth Circuit.

Argued April 10, 1991.

Decided July 30, 1991.

As Amended Aug. 6, 1991.

---

96

Dennis Francis O'Brien, White, Mindel, Clark & Foard, Towson, Md., for plaintiff-appellant.

Barrett W. Freedlander, Weinberg and Green, Baltimore, Md., for defendant-appellee.

Before ERVIN, Chief Judge, MURNAGHAN, Circuit Judge, and GODBOLD, Senior Circuit Judge of the United States Court of Appeals for the Eleventh Circuit, sitting by designation.

## OPINION

GODBOLD, Senior Circuit Judge:

This is a removed diversity case, tried under Pennsylvania law.

Plaintiff, an experienced skier, was injured in a fall on a Pennsylvania ski slope. She sued the owner of the ski area alleging various acts of negligence with respect to design, inspection, equipment and maintenance of the ski slope. These negligence theories have substantially dropped out of the case, and, as presented to us, the case concerns issues of the liability of the possessor of land to its invitee for harm caused by a condition of the premises. At the conclusion of plaintiff's case the court directed a verdict for defendant.

Plaintiff is an experienced skier who comfortably skis the most difficult slopes. At the defendant's area she and her com-

panions, after skiing less difficult slopes, chose to make their final runs on Ramrod, the most difficult slope. It was designated and marked as a "double black diamond slope," which identifies it as the most difficult slope of the area. Plaintiff regularly skied double black diamond slopes. The ski area was marked with signs that warned of the hazards of skiing, including ice, forest growth, and rocks.

Ramrod had a downhill grade in the direction of travel. Also it sloped left to right, from higher ground to the left of the slope to lower ground to the right. Off the slope to the right and down the right hand fall of the hill there were plainly visible trees and rocks. At some places along the right edge of the slope the defendant had erected plastic web fencing.

The Ramrod slope was coated with ice in places. Plaintiff acknowledged that the presence of the ice was a condition that she anticipated, although it was more extensive than she expected. She entered upon the slope and, within about six seconds, slipped on the ice and fell. She slid down the slope and to the right, and went underneath a section of the plastic fencing and then into rocks off the Ramrod slope and down the side fall of the hill, resulting in her injuries.

In its oral opinion supporting the directed verdict the district court developed two grounds. Presumably these were drawn from *Jones v. Three Rivers Management Corp.*, 483 Pa. 75, 394 A.2d 546 (1978), in which the Supreme Court of Pennsylvania considered a two-prong test of liability where injury arises out of conditions at premises at which plaintiff is a participant or spectator: to establish a duty plaintiff must introduce evidence that the injury was not caused by "a risk inherent in the activity in question" and evidence that an alleged defective condition of the premises is not obvious.

With respect to obviousness the court looked to the Restatement of Torts § 343a.

Known or Obvious Dangers:

(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

■ The court found that the defendant had no duty of care because of the obviousness of the danger. It found that skiing is an inherently dangerous sport and that, as evidenced by plaintiff's own testimony, she was aware that collisions with rocks and trees were a hazard of skiing that could result in injury or death. With respect to skiing on the Ramrod slope, the court found that plaintiff was aware that it was a "double diamond" slope and that, when ascending the ski lift, she had actually seen the trees and rocks off the slope to the right. Moreover, the court found that the dangers and conditions on Ramrod were obvious to a reasonable person.

■ With respect to the inherent risk prong, the district court found that plaintiff had presented no evidence that defendant had deviated from established custom, no evidence that possibility of collision with rocks or trees was not inherent, and no evidence that ice, design of the slope, or the fencing used by defendant deviated from ordinary custom.

■ Plaintiff makes essentially the same contentions with respect to both inherent danger and obviousness. She acknowledges that she was aware of the hazards of skiing in general and of the presence of rocks and trees to the right of the Ramrod slope. But she asserts that the trees and rocks that otherwise would have been an obvious danger were not known or obvious to her as dangerous because it appeared to her that the plastic fencing was a barrier that shielded her from accidental contact with the stones and trees. Similarly, plaintiff says that what otherwise would have been an inherent danger was, so far as she was concerned, not a danger at all but a condition from which she thought the fence protected her.*

---

* The court found that defendant had no duty to erect a fence as a protective barrier. Plaintiff

does not contend there was such a duty; rather her theory is that defendant's voluntarily-erect-

The district court did not err in its analysis of the facts as applied to § 343a. Plaintiff had seen plastic webbing like the particular fence in use in ski areas all over the world. She acknowledged that the fence served as a warning of stones and trees off the slope but she assumed, she said, that it was a protective barrier as well. There was no substantial evidence undergirding her assumption. Her assumption was not based upon industry standards or regulations or practice to erect such barriers; indeed the testimony was that no such standards or regulations or practice existed. Her assumption was not based upon her having seen a fence like this one serve as a barrier to prevent skiers from coming in contact with physical hazards, for she had never seen such an incident, i.e., she had never seen plastic fencing serve the purpose that she said she assumed it was intended to serve for her. Her assumption that the fence was a barrier could not reasonably have been based upon its appearance. It consisted of plastic webbing 3 to 4 feet high, mounted on poles stuck in the snow, not otherwise attached or anchored to the snow, leaning first one way and then the other and with gaps here and there between it and the snow underneath. The district court found that, in photographs in evidence, the plastic fence appeared "rather flimsy."

The testimony of plaintiff's expert was not sufficient to create a substantial issue of non-obviousness or of "no inherent danger," on the ground that plaintiff reasonably perceived the fence as a protective barrier. Like plaintiff herself, the expert "assumed" that the fence was a barrier and that "it must have been intended as a barrier." Yet, after examining photographs of the fence, he described it as "obviously not ... an effective barrier in any sense of the word." He saw no objection to the fence's being put up as a warning. He described fences like this one as commonly used in ski areas to warn skiers not to go past, to warn of danger on the other side of the fence, to mark closed trails, and to close off areas. Though he saw no objection to the fence as a warning he saw no necessity for it because the trees and rocks were evident to skiers. This expert testimony, arguably supporting a construct that plaintiff might have been misled into thinking the fence was a barrier and not a warning, was contrary to plaintiff's own testimony that she recognized the fence as a warning but thought it was a barrier as well.

■ Plaintiff makes a separate argument that the case should not have been analyzed under Restatement § 343a, the so-called "no duty" section relating to liability of the possessor of premises, but instead under principles of assumption of risk as they relate to downhill skiing. And, plaintiff says, assumption of risk was a jury question. Pennsylvania has abolished assumption of risk in favor of comparative negligence, but by exception it preserved assumption of risk with respect to downhill skiing in the Pennsylvania Skier's Responsibility Act, 42 Pa.Cons.Stat.Ann. § 7102(c) (Purdon Supp.1982). In 1983, in *Smith v. Seven Springs Farm, Inc.*, 716 F.2d 1002 (3d Cir.1983), the Third Circuit considered the continued availability of assumption of risk as a defense, after adoption of the Skier's Responsibility Act, and concluded that it had partially survived. Three months later, in *Carrender v. Fitterer*, 503 Pa. 178, 469 A.2d 120 (Pa.1983), not a skiing case, the Pennsylvania Supreme Court pointed out that assumption of risk was but another way of saying that the possessor of premises had no duty to protect the invitee against known and avoidable dangers. Assumption of risk is "essentially subjective," *Smith* at 1009, and ordinarily the existence of knowledge, voluntariness, and reasonableness on the part of plaintiff are questions for the jury, but where reasonable persons could not differ as to the conclusion the issue is for the court. *Id.* In this case, where no substantial evidence supports plaintiff's assumption that the plastic fence was a protective barrier and

ed fence caused her to assume that rocks and trees that otherwise might be inherent and obvious dangers were not dangers at all.

overwhelming evidence is contrary to such an assumption, the matter was properly and correctly addressed by the court.

AFFIRMED.