**Stanley WAGNER, Appellant,**

v.

**FIRESTONE TIRE & RUBBER CO., an Ohio Corporation, Appellee.**

**No. 88–5580.**

United States Court of Appeals, Third Circuit.

Argued Dec. 28, 1988.

Decided Dec. 6, 1989.

James T. Reilly (argued), Egli, Reilly, Wolfson, Sheffey & Schrum, Lebanon, Pa., for appellant.

* Honorable John P. Fullam, Chief Judge, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

Morton F. Daller (argued), Rawle & Henderson, Philadelphia, Pa., for appellee.

Before SLOVITER and BECKER, Circuit Judges, and FULLAM, District Judge *.

## OPINION

BECKER, Circuit Judge.

This is a products liability case.[1] The plaintiff, Stanley Wagner, received serious injuries to his head and left leg when a Five Degree Commander Wheel Assembly manufactured by defendant Firestone Tire and Rubber Company exploded while he was changing a truck tire. The case was tried to a jury, which made a number of relevant findings. The jury rejected Wagner's contention that the wheel assembly was defective in design. Additionally, although it found that Firestone had failed adequately to warn Wagner of the potential hazard of explosion and that Firestone was negligent, the jury also found that Firestone's failure to warn and negligence were not a substantial cause of his accident. Furthermore, the jury determined that Wagner had assumed the risk and was contributorily negligent, and that his contributory negligence was a substantial factor in the accident. In view of these findings, a verdict was molded for Firestone.

The district court denied Wagner's motion for a judgment n.o.v. or a new trial, and Wagner appealed. The primary question before us is whether the district court erred in rejecting Wagner's contention that there was insufficient evidence to support the jury's finding that Wagner assumed the risk. We conclude that it did not and that the jury's verdict was supported by the evidence. As will be seen, this conclusion moots most of Wagner's other contentions on appeal. Those that are not mooted we find lacking in merit. We therefore will affirm.

1. Jurisdiction is founded on diversity of citizenship, 28 U.S.C. § 1332 (1982). The merits are governed by Pennsylvania law.

## I.

From December 1978 to December 1980, Wagner was employed at Plaza 81, an automobile and truck service station, where he learned to assemble multi-piece truck tire rims. As part of his job, he performed light repairs on trucks and truck tires, both in the shop and on road service calls. Wagner's injury occurred on March 31, 1979, when the Firestone wheel assembly that he was changing exploded during a road service call on an interstate highway in Dauphin County, Pennsylvania. Wagner lost sight completely in his right eye and partially in his left eye. Additionally, the explosion broke his left leg and resulted in a permanent shortening of that leg.

The wheel assembly involved in the accident was a three-piece Firestone Five Degree Wheel Assembly. The three concentric steel circular parts that make up the wheel assembly (the rim base, the side ring, and the lock ring) have interlocking notches that match and hold the parts together. An inflatable tube is contained inside the assembly. The tube is filled with air that is under approximately eighty to ninety pounds of pressure per square inch. Whether the wheel assembly can hold the high pressured air in the tube depends upon the quality of the notch interlock. If the parts, when put together, do not properly match, or if the notches have rusted, or are otherwise defective, the air pressure stored inside the tube may cause explosive separation of the parts.

At trial it was established that there are two devices available to diminish the risk of injury to individuals repairing tires with multi-piece wheel assemblies: the safety cage and the clip-on air chuck. The safety cage is constructed of metal bars inside of which the tire is placed while the mechanic reconstructs the wheel assembly and inflates the tire. If explosive separation should occur, the cage prevents the pieces of the multi-piece rim from hitting persons or property in the vicinity of the explosion. There are two types of safety cages: stationary, intended for in-shop use, and portable, intended for road service use. The second safety device, the clip-on air chuck, is a clamp located at the end of the hose leading from the air compressor to the tire. The clamp attaches the hose to the tube valve, allowing the person changing the tire to stand back, away from the tire, while inflation takes place.

What occurred during the road service call on March 31, 1979 is not completely clear from the trial testimony. Wagner cannot remember the events of the night of the accident. However, the driver of the truck whose tire Wagner was repairing, Elias P. Gamrin, observed Wagner's attempt to repair the tire. According to his testimony, neither of the accepted safety devices was used when Wagner reassembled the wheel. Gamrin testified that a safety cage was "definitely not used" and that Wagner was "holding the air hose that was putting air into the tire." Gamrin Trans. at 20, 58 (Nov. 19, 1984).

There was evidence that a portable safety cage was available to Wagner at the time of the accident, and that he had been trained to use one. G. Philip Lacaria, the owner of Plaza 81 at the time of Wagner's employment, testified that the garage owned two portable cages prior to the accident, Lacaria Trans. at 78–79 (Feb. 24, 1988), and that these cages were always kept on the service trucks, *id.* at 80, 85. Additionally, Marlin Shenk, the Manager of the Plaza 81 garage, who was responsible for properly training the employees, when asked whether he had instructed Wagner about portable cages, answered "right." Shenk Trans. at 110 (Feb. 24, 1988). Shenk also testified that only service trucks with portable cages on board were used to conduct tire repairs. *Id.* at 130. According to Wagner's testimony, however, he had never seen portable cages at Plaza 81 until after his accident. Wagner Trans. at 9 (Feb. 17, 1988).

No dispute exists as to the presence of the clip-on air chuck on the service truck used during the accident. Wagner testified at trial that the two Plaza 81 trucks were equipped with clip-on air chucks in March of 1979 and that he was trained to stand away from the wheel assembly after at-

taching the clip-on chuck to the tire valve. *Id.* at 45–46, 49.

## II.

Wagner brought suit in the district court against Firestone, asserting negligence and strict products liability claims. The negligence theory was based on the contention that Firestone had failed to exercise reasonable care in its production, design and marketing of its multi-piece wheel assemblies because it continued to produce multi-piece rims although a safer single piece rim technology was available. Wagner's strict products liability theory was two-fold: (1) that Firestone's Five Degree Commander Wheel Assembly was defective in design; and (2) that Firestone had failed to provide adequate warning or instructions in the use of its wheel assembly products.

The district court charged the jury with respect to both negligence and strict liability, and the jury answered special verdict interrogatories, pursuant to Fed.R.Civ.P. 49(a), which addressed both liability theories.[2] The jury returned a verdict in favor of Firestone, finding: (1) that the wheel assembly was not defective in design; (2) that Firestone failed to provide sufficient warnings about the use of its wheel products but that the failure was not a substantial factor in causing Wagner's injuries; (3) that Firestone was negligent but that this was not a substantial cause of Wagner's accident; and (4) that Wagner both assumed the risk and was contributorily negligent and the contributory negligence was a substantial cause of his accident.

Wagner moved, pursuant to Fed.R.Civ.P. 50(b), for a judgment n.o.v. or, in the alternative, for a new trial. Wagner's argu-ments fell into the following five categories: (1) the weight of the evidence did not support the jury findings in favor of Firestone on the issues of design defect, proximate cause, contributory negligence, and assumption of risk; (2) the court's charge to the jury was erroneous with respect to the issue of assumption of risk; (3) the court failed to reinstruct the jury on the substantial cause question after the jury requested further instruction on that issue; (4) the court made erroneous evidentiary rulings excluding evidence that was admissible on the issues of design defect, failure to warn, and negligence; and (5) the court erroneously admitted evidence that Wagner had prior criminal convictions. The district court denied the motion for judgment n.o.v. on the grounds that the jury's verdict was supported by the evidence presented at trial and that the issue of Wagner's assumption of risk was properly put before the jury to resolve factual discrepancies in the testimony. Dist. Ct. Op. at 5 (June 15, 1988). The district court also denied the motion for a new trial, upholding its prior evidentiary rulings, and concluding that its failure to reinstruct on the substantial cause issue was not plainly erroneous. Dist. Ct. Op. (June 15, 1988).

In this appeal, Wagner raises only a subset of the issues raised in his rule 50(b) motion in the district court. Wagner contends that the district court erred in denying his post-trial motion because the question of assumption of risk should not have been submitted to the jury, and because the instruction given the jury about assumption of the risk was erroneous. Wagner also argues that the district court made a number of erroneous evidentiary rulings.[3]

---

**2.** The interrogatories asked:

1. Has the plaintiff proven that [the Firestone Five Degree Commander Wheel Assembly was the device] involved in the accident? ... 2. Do you find that the Firestone Five Degree Commander Wheel Assembly was defective in design? 3. Was such a defect a substantial cause of the accident? 4. Did you find that the *defendant, Firestone Tire and Rubber Company,* failed to provide adequate warnings or instructions in the use of its wheel products as to make the product defective? 5. Do you find that the failure to give such adequate warning or instructions was a substantial factor in causing the injury to plaintiff, Stanley Wagner? 6. Do you find that Firestone was negligent? 7. Was such negligence a substantial cause of the accident? 8. Did the plaintiff voluntarily assume the risk? 9. Was the plaintiff contributorily negligent? 10. If so, was this a substantial cause of his accident?

App. at 47–48(1).

**3.** Almost all of Wagner's evidentiary claims relate to the issues of design defect, failure to warn, and negligence. The following are the

Additionally, he alleges that the district court committed reversible error by failing to reinstruct the jury on the issue of substantial causation.

### III.

In examining the district court's denial of appellant's motions for a judgment n.o.v. or, in the alternative, a new trial, "we are required to 'view all the evidence and inferences reasonably drawn therefrom in the light most favorable to the party with the verdict.'" *Marino v. Ballestas*, 749 F.2d 162, 167 (3d Cir.1984) (citation omitted). We may reverse the judgment of the district court only if "'the record is critically deficient of that minimum quantity of evidence from which a jury might reasonably [decline to] afford relief.'" *Aloe Coal Co. v. Clark Equipment Co.*, 816 F.2d 110, 113 (3d Cir.1987) (citation omitted). To evaluate the evidence properly in light of the preceding standard, we must first review

evidentiary claims separated roughly by category. Relevant to the design defect claim, Wagner contends that the district court erred: (1) by restricting Wagner to introducing testimony about multi-piece rim tire accidents before the time of his accident, while allowing Firestone to advert to the total number of tires on the road at times after the accident; and (2) by excluding testimony of a tire shop owner relating to the dangerousness of multi-piece rim tires. Relevant to the failure to warn claim, Wagner contends that the district court erred: (1) by refusing to allow the introduction of two videotapes demonstrating multi-piece rim separation explosions that could have been used to train Wagner; (2) by excluding evidence relating to warnings made by other tire companies and subsequent warnings placed on tires by Firestone; (3) by allowing into evidence a Firestone report related to warnings that Wagner alleges was hearsay; and (4) by excluding evidence of Firestone's efforts to stop other manufacturers from placing warnings on their products. Relevant to the negligence claim, Wagner contends that the district court erred: (1) by refusing to allow into evidence documents tending to show that Firestone was aware of the danger presented by the multi-piece rim tires; (2) by excluding evidence that Firestone knew of problems caused by mismatch of the components of multi-rim tires; (3) by excluding evidence of accidents involving other manufacturers' multi-piece rim tire components; and (4) by refusing to allow Wagner's expert to testify as to the adequacy of Wagner's training, which may also bear on whether Wagner was contributorily

the legal elements of Wagner's claim and Firestone's assumption of risk defense.

### A.

Pennsylvania has adopted the Restatement (Second) of Torts as its law of products liability. *See Webb v. Zern*, 422 Pa. 424, 425, 220 A.2d 853, 854 (1966). Section 402A of the Restatement provides:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

negligent. Firestone replied forcefully to all of these contentions.

We find no need to address the evidentiary objections with respect to the existence of a design defect and failure to warn because the plaintiff is barred from recovering on those theories, in any case, by the jury's finding of assumption of risk. *See infra*, pp. 656–58 & n. 4. Similarly, we find no need to address the evidentiary objections with respect to negligence because the jury's finding that Firestone's negligence was not a substantial factor in the accident bars Wagner's recovery on that theory. *See infra*, pp. 658–59.

Only one evidentiary claim does not fall into any of these categories. Wagner contends that the admission of his prior convictions for passing bad checks and forgery was erroneous. However, we find this contention to be without merit. Under Fed.R.Evid. 609(a)(2), these convictions, which involved dishonest activity, are clearly admissible for the purpose of impeachment. Furthermore, Wagner neither asked for a limiting instruction at the time of the examination nor objected to the charge bearing on the subject as given. We do not believe that the failure to give a limiting instruction either at the time of the examination or in the charge rises to the level of plain error. *See Bereda v. Pickering Creek Industrial Park, Inc.*, 865 F.2d 49, 53 (3d Cir.1989) (articulating plain error standard for reviewing jury instructions that were not objected to at trial).

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Restatement (Second) of Torts § 402A (1965).

■ Under Pennsylvania law, assumption of risk is a complete defense in a section 402A products liability action alleging a design defect or failure to warn rising to the level of a design defect. *See Lonon v. Pep Boys, Manny, Moe & Jack,* 371 Pa.Super. 291, 296–97, 538 A.2d 22, 25 (1988); *Rutter v. Northeastern Beaver County School District,* 496 Pa. 590, 613, 437 A.2d 1198, 1209 (1981). In order to prevail on an assumption of risk defense, the defendant must show "that the plaintiff knew of the defect and voluntarily and unreasonably proceeded to use the product or encounter a known danger." *Lonon,* 371 Pa.Super. at 297, 538 A.2d at 25; *see also Staymates v. ITT Holub Industries,* 364 Pa.Super. 37, 49, 527 A.2d 140, 146 (1987).

■ Assumption of risk is based on the notion that, by taking the chance of injury from a known risk, the plaintiff has consented to relieve the defendant of its duty toward him. *See Green v. Sanitary Scale Co.,* 431 F.2d 371, 374 (3d Cir.1970); Restatement (Second) of Torts § 496C, comment h. Assumption of risk thus depends upon subjective awareness of the defect, which can be proved "by circumstantial evidence sufficient to permit an inference that the plaintiff was aware [of] and understood the risk." *Staymates,* 364 Pa.Super. at 49, 527 A.2d at 146. To imply assumption of risk from the plaintiff's conduct, the conduct "must be such as fairly to indicate that the plaintiff is willing to take his chances." Restatement (Second) of Torts § 496C, comment h. Whether the plaintiff knows of the existence of the risk and whether he appreciates its magnitude and unreasonable character are questions of fact to be determined by the jury. *Staymates,* 364 Pa.Super. at 49, 527 A.2d at 146. However, before the theory may be submitted to a jury, the defendant must produce evidence that the plaintiff fully understood the specific risk, and yet voluntarily chose to encounter it. *Fish v. Gosnell,* 316 Pa.Super. 565, 577, 463 A.2d 1042, 1048 (1983).

**B.**

■ Turning to the sufficiency of the evidence, Wagner contends that it was erroneous to put the assumption of risk defense before the jury because Wagner testified on direct examination that, although he was aware that the components of the tire rim could separate, he could not foresee that the separation would lead to serious personal injury. Also Wagner testified that he did not know what a portable cage was until after the time of his accident. However, examination of the trial record leads us to conclude that the evidence supporting Firestone's position was sufficient to put the assumption of risk defense before the jury and to support the jury's verdict on that issue.

First, and foremost, the record supports the conclusion that Wagner was trained to use a clip-on air chuck in order to avoid personal injury when inflating the wheel assembly from close range. *See* Wagner Trans. at 45–46 (Feb. 17, 1988). And it is uncontradicted on the record that Wagner had a clip-on chuck at the time of the accident but did not use it. Wagner himself testified that the service truck was equipped with a clip-on air chuck that he could have attached to the hose leading from the air compressor to the tire, allowing him to stand away from the inflating tire. Moreover, Gamrin testified that on the date of the accident Wagner inflated the tire by holding the hose directly to it.

Because the basis of the doctrine of assumption of risk is the plaintiff's acceptance of the risk, his choice must be voluntary. The Restatement (Second) of Torts provides the following guidance with respect to the voluntariness requirement:

Where the tortious conduct of the defendant forces upon the plaintiff a choice of conduct, but still leaves him an alterna-

tive which affords full protection, and which under the circumstances he may reasonably be required to elect, his choice of the particular risk may still be regarded as a voluntary one. If the plaintiff acts unreasonably in making his choice, he may be barred from recovery ... by his assumption of risk ... in failing to exercise reasonable care for his own safety.

Restatement (Second) of Torts § 496E, comment d. Although the clip-on chuck could not guarantee Wagner's safety, it is undisputed that the device provides significant protection and greatly reduces the risk of harm by a wheel assembly explosion. Consequently, Wagner's choice to disregard the readily available clip-on chuck can support a finding of voluntary assumption of risk.

Second, viewing the evidence in the light most favorable to Firestone, as we must, the record supports Firestone's contention that Wagner failed to use the portable safety cage. Although the evidence regarding the availability of the portable cage is not uncontradicted, there was sufficient evidence pointing to the presence of a safety cage at the accident scene for a reasonable jury to believe that a cage was there. The jury might have disbelieved Wagner's contention that he had never seen a portable cage prior to the accident, and believed: (1) Shenk's testimony that Wagner had been trained to use the portable cage; and (2) Shenk's and Lacaria's testimony that the portable cages were always kept on the service trucks. Thus, there is sufficient evidence to sustain the jury's conclusion that Wagner had the requisite subjective awareness of the defect to voluntarily assume the risk by failing to utilize an available portable safety cage. In view of the foregoing, the jury's finding of assumption of risk stands as a bar to Wagner's design defect and failure to warn claims under section 402A.[4]

4. None of Wagner's evidentiary objections involves evidence relevant to assumption of risk. Because the jury's finding on that point is sufficient to bar recovery on either a design defect

### C.

■ Wagner's contention that the district court erred in its assumption of risk instruction to the jury is also without merit. Wagner raised no objection to the charge at the time of trial. When asked by the district court whether there were any deficiencies with the instruction, his attorney responded, "[s]ounded good to me." Trans. at 84 (Feb. 26, 1988). A party who does not object to a charge waives the issue on appeal unless the " 'error is fundamental and highly prejudicial or if the instructions are such that the jury is without adequate guidance on a fundamental question and our failure to consider the error would result in a miscarriage of justice.' " *Bereda v. Pickering Creek Industrial Park, Inc.*, 865 F.2d 49, 53 (3d Cir.1989) (citation omitted). The error Wagner alleges regarding the instruction does not meet this standard. With respect to assumption of risk, the district court charged in part that "[if] a Plaintiff knew of the risk eventually causing his injury and voluntarily proceeded to use the product with knowledge of the danger of the risk, he is barred from recovery." Jury Charge at 69–70. This instruction, which essentially comports with Pennsylvania law, does not amount to fundamental error.

### D.

The negligence issue presented to the jury was whether a reasonably prudent manufacturer would have chosen an available alternative design rather than use the Five Degree Commander Wheel Assembly design. Trans. of Court's Jury Charge at 72 (Feb. 26, 1988). As noted above, although the jury found that Firestone was negligent, it also found that this negligence was not a substantial cause of Wagner's injuries. It is this causation finding that barred Wagner from recovering in negligence, and Wagner has not argued on appeal that this finding was unsupported by sufficient evidence. Therefore, unless he is saved by his evidentiary objections, Wagner cannot prevail on his negligence claim.

or a failure to warn theory of liability, Wagner's evidentiary objections that bear on either theory are immaterial.

Three of Wagner's evidentiary objections bear directly on his negligence claim. First, Wagner argues that the district court erroneously excluded evidence of prior accidents involving multi-piece wheels that, he contends, are similar to those manufactured by Firestone. Second, Wagner urges that the district court erred by excluding the document referred to as "the Stevens Institute Study," which recommended the removal of multi-piece wheel assemblies from the tire market. Third, Wagner argues that the district court erred in excluding documents that would have established that Firestone knew of the danger of explosion that results from mismatch of the pieces of a multi-piece rim. This evidence was intended to show that Firestone had notice of the dangerous nature of their product.[5] Additionally, the evidentiary ruling excluding portions of the testimony of Wagner's expert concerning the appropriate time needed to adequately train tire mechanics arguably relates to Firestone's negligence or Wagner's contributory negligence.

However, none of these claims, even if meritorious, bears on causation. Therefore, none can disturb the jury's uncontested finding that Firestone's negligence was not a substantial cause of Wagner's injuries, which precludes Wagner's recovery on the negligence claim.[6] The fact that Wagner might have been entitled to introduce evidence that bears on negligence but not on causation is immaterial.[7]

The judgment of the district court will be affirmed.

---

5. One of the documents, for example, referred to the locking ring on multi-piece rim truck tires as "KILLER ... rings." Exhibits App. at 7A-4.

6. Wagner contends that after the jury requested clarification on the definition of a substantial factor, the district court should have reinstructed the jury on that issue. Wagner's counsel once again failed to object, this time before the jury retired or during the meeting with the judge at which the response to the substantial factor inquiry was crafted. Because the district court's substantial factor instructions to the jury were neither fundamentally erroneous, nor so incomplete as to leave the jury without adequate guidance, this is not a ground for reversal. *See supra*, p. 658.

7. Furthermore, Wagner's negligence claim is probably also barred by the jury's finding of assumption of risk. Although a plurality of the Pennsylvania Supreme Court purported to abolish assumption of risk as a defense in negligence suits, *see Rutter v. Northeastern Beaver County School District*, 496 Pa. 590, 613, 437 A.2d 1198, 1209 (1981), this Court has stated that *Rutter* could not be authority for the aboli-

tion of the doctrine of assumption of risk without the support of a majority of the court." *Smith v. Seven Springs Farm, Inc.*, 716 F.2d 1002, 1008 (3d Cir.1983) (citing *Vargus v. Pitman Manufacturing Co.*, 675 F.2d 73 (3d Cir. 1982) (opinion *sur* denial of panel rehearing)).

After *Rutter*, the Pennsylvania Supreme Court applied assumption of risk as a complete defense in a negligence case in which the plaintiff could have avoided "a known or obvious danger." *See Carrender v. Fitterer*, 503 Pa. 178, 189 & n. 6, 469 A.2d 120, 125 & n. 6 (1983). *Carrender* involved a plaintiff who wore a leg prosthesis and who admitted knowing that maneuvering on ice presented particular danger to prosthesis wearers. Nonetheless, she chose to park and walk on an isolated ice patch, even though she knew that convenient parking spaces free of ice were available. The *Carrender* court held that the plaintiff had assumed the risk of injury as a matter of law and could not recover. The court reasoned that "a holding that a risk has been assumed is in many cases tantamount to a determination that, as a matter of law, the defendant owed the plaintiff no duty." *Id.* Pursuant to *Carrender*, the jury's finding of assumption of risk may well bar Wagner's negligence claim.