**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2380-15T1

GERALD ORRICO,

    Plaintiff-Appellant,

v.

PORT AUTHORITY TRANS-
HUDSON CORPORATION,

    Defendant-Respondent.

_____

> Argued March 20, 2018 — Decided August 30, 2018
>
> Before Judges Fasciale, Sumners and Moynihan.
>
> On appeal from Superior Court of New Jersey,
> Law Division, Hudson County, Docket No. L-
> 5389-13.
>
> Jaclyn A. Gannon argued the cause for
> appellant (Cerussi & Gunn, PC, attorneys;
> Charles A. Cerussi, of counsel and on the
> brief).
>
> Thomas R. Brophy argued the cause for
> respondent (Port Authority Law Department,
> attorneys; Thomas R. Brophy and Lauren T.
> Grodentzik, of counsel and on the brief).

PER CURIAM

    Plaintiff Gerald Orrico sued his employer, the Port Authority

Trans-Hudson Corporation (PATH), under the Federal Employer's

Liability Act (FELA), 45 U.S.C. §§ 51 to 60, for premises liability for a knee injury he sustained when he tripped and fell while walking along railroad tracks. The jury found that PATH was not negligent, and the trial judge denied Orrico's motion for a new trial. Orrico argues the trial judge erred in denying his motion for a new trial in which he contended the judge made incorrect evidentiary rulings and gave misleading jury instructions, and that PATH counsel made prejudicial summation remarks. We affirm in part, reverse in part, and remand for a new trial.

I

A FELA action brought in state court is governed by federal law on both liability and damages. Donovan v. Port Auth. Trans-Hudson Corp., 309 N.J. Super. 340, 348 (App. Div. 1998). Plaintiff alleges defendant violated FELA by negligently failing to provide him with a reasonably safe workplace. See 45 U.S.C. § 51. FELA provides in pertinent part:

> Every common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its . . . works.
>
> [Ibid.]

We begin with a brief synopsis of the evidence concerning the alleged accident. Orrico, a PATH railroad switchman/engineer, was walking along the Harrison Yards railroad tracks, which is secured by a perimeter fence, when he stepped in a hole in the ballast — the stones that surround and hold the railroad cross ties in place. John Venditolli, a PATH operations examiner with the responsibility to investigate accidents at the Harrison Yards and determine if they were caused by unsafe conditions, testified on Orrico's behalf. He stated he saw two holes — which were "hard to notice due to sun glare and they blended in with the rest of the ballast" — five minutes after the accident. Although he was unaware how the holes were created, he remarked that it "looked like someone took a shovel worth of ballast stone and, you know, dug in, dumped it," possibly to get to air lines that are underneath the ballast. He filled in the holes by kicking the ballast with his foot. Another witness for Orrico, Jasmine Hosni, a PATH Operations Examiner, testified that uneven surfaces are regularly encountered by PATH workers and that the hole should have been taken care of.

Testifying on behalf of PATH, John Wargo, Chief Maintenance Supervisor of PATH's track department, who oversees maintenance, repair and inspection of ballast, stated he had seen similar ballast holes on the tracks, which were not dug by a person because

3                                          A-2380-15T1

he was unaware of any maintenance or inspection that required removal of the ballast with a shovel. He remarked such holes "could be caused simply by somebody just walking through the ballast if it's [a] soft ballast or it could be caused by equipment running through the area." He further stated that while a large section of the track is inspected daily, the entire track is inspected monthly.

## II

Orrico appeals the denial of his motion for a new trial claiming that: (1) the judge erred in denying the admission of evidence; (2) the judge erred in giving jury instructions regarding notice of the unsafe condition and not instructing the jury regarding respondeat superior; (3) defense counsel made prejudicial remarks in his closing argument; and (4) the verdict was against the weight of the evidence.

We begin by noting that federal law governs a FELA action, including a determination of whether a verdict is contrary to the weight of the evidence. Kapsis v. Port Auth. of N.Y. & N.J., 313 N.J. Super. 395, 402 (App. Div. 1998); see Pressler & Verniero, Current N.J. Court Rules, cmt. 1.6 on R. 4:49-1 (2014). When examining the denial of a motion for a new trial under federal law, a reviewing court applies the abuse of discretion standard, see Springer v. Henry, 435 F.3d 268, 274 (3d Cir. 2006), and the

evidence is viewed in the light most favorable to the party for whom the verdict was returned, Wagner v. Firestone Tire & Rubber Co., 890 F.2d 652, 656 (3d Cir. 1989). A new trial should be granted "only where the 'great weight' of the evidence cuts against the verdict and 'where a miscarriage of justice would result if the verdict were to stand.'" Springer, 435 F.3d at 274 (quoting Sheridan v. E. I. Dupont de Nemours & Co., 100 F.3d 1061, 1076 (3d Cir. 1996) (en banc)). In order for a motion for a new trial to be granted on the grounds the verdict was against the weight of the evidence, the record must show that the jury's verdict "cries out to be overturned or shocks [the] conscience." Williamson v. CONRAIL, 926 F.2d 1344, 1353 (3d Cir. 1991). However, a court must not substitute its "judgment of the facts and the credibility of the witnesses for that of the jury." Lind v. Schenley Indus., Inc., 278 F.2d 79, 90 (3d Cir. 1960) (en banc).

Guided by these principles, we conclude the jury verdict was a miscarriage of justice and that there should be a new trial because of our determinations regarding the admission of evidence and the jury instructions that are discussed below.

A. Evidentiary Rulings

Orrico argues that the judge's limitations on the testimony of two of his key witnesses, both PATH employees, denied him the right to present evidence of PATH's negligence. He sought to have

Venditolli testify if he "would agree that the person who dug the hole[] should have ensured that they were either filled in or cordoned off." The judge sustained defense counsel's objection[1] because "the question asked goes to the question of liability, which is ultimately a jury question. . . . He's not an expert. He's a fact witness." The judge was also unpersuaded that Venditolli's work duties qualified him to answer the question because there was nothing in the incident report he prepared that indicated who was responsible. Orrico contends that Venditolli, even though not an expert, should have been allowed to testify regarding his lay opinion under N.J.R.E. 701 despite the fact his incident report made no such assertion and his testimony goes to an ultimate issue to be decided by the jury.

Orrico was also denied the opportunity to admit into evidence a portion of an incident report authored by PATH Operations Examiner, Millard Corbett, stating the incident was caused by an unsafe condition "of holes dug in ballast," as well as Corbett's testimony that his findings were based upon looking at photographs of the incident scene and speaking to Venditolli and Orrico. The judge rejected Orrico's contention that the report constituted a

---

[1] Counsel claimed Venditolli was not an adverse witness and could not be asked a leading question. He also asserted no foundation was provided for how the holes were dug; thus, Venditolli's answer would have been "pure speculation" and "highly prejudicial."

statement by a party opponent under N.J.R.E. 803(b), determining the report was not a business record because it was "[Corbett's] job to fill out [the report]. He's not an 'authorized representative'" of PATH and the report's findings are based upon hearsay. The judge further added the report and Corbett's testimony were inadmissible because whether the holes in the ballast were an unsafe condition is ultimately a jury question. Orrico argues the judge's refusal to admit the incident report and allow Corbett's testimony concerning the report was contrary to N.J.R.E. 701 and 704. He contends that Corbett was an authorized representative of PATH and that his findings were based upon photos of the holes and interviews with him and Venditolli.

We conclude that the judge mistakenly applied his discretion in barring Venditolli and Corbett's testimony and the latter's incident report. See Hisenaj v. Kuehner, 194 N.J. 6, 16 (2008). A witness may offer lay opinion "if it (a) is rationally based on the perception of the witness and (b) will assist in understanding the witness' testimony or in determining a fact in issue." N.J.R.E. 701. By contrast, N.J.R.E. 702 states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an

opinion or otherwise." N.J.R.E. 704 provides: "Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Thus, "[i]f lay . . . opinion testimony is otherwise competent under N.J.R.E. 701 . . . , the fact that it may embrace the ultimate fact issue in dispute does not render it incompetent." Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. 1 on N.J.R.E. 704 (2018).

Venditolli's barred testimony fell within the parameters of these evidentiary rules. Based upon his observations of the incident scene within minutes after it occurred, he determined that the holes in the ballast were an unsafe condition that were created by someone who should have filled in the holes to prevent the type of incident that Orrico claimed caused his injury. It was Venditolli's responsibility as a PATH operations examiner to oversee the Harrison Yards and investigate an accident such as this, and determine how it occurred. Though his testimony would have assisted the jury in understanding the ultimate issue before the jury — conditions of the ballast that allegedly caused Orrico's injury — his proffered lay opinion was admissible.

Similarly, Corbett's report could have been admitted and his testimony regarding the report's findings should have been allowed. His finding was based upon photos and interviews of

Venditolli and Orrico, and should not have led the judge to deny the admissibility of his report or his testimony. Corbett was doing the job PATH authorized him to perform; speaking with witnesses and viewing any evidence, including photos. The fact that his observation of the accident scene was limited to photos goes to the weight of his testimony not its admissibility. His opinion, which was based upon his employment duties, did not require that he be qualified as an expert. Furthermore, we see no need for the exclusion of such evidence due to a risk of undue prejudice substantially outweighing its probative value. N.J.R.E. 403.

B. <u>Jury Instructions</u>

Orrico argues the judge erred in giving jury instructions on actual and constructive notice. Because he contended PATH, through its agents or employees, created the unsafe condition of holes in the ballast that caused his injury, he therefore argues he did not have to prove that PATH knew or should have known of the unsafe condition as set forth in the jury instructions, section 89-11 regarding foreseeability considerations, or section 89-15 regarding the duty to inspect. He also contends that since PATH created the unsafe condition, the judge should have included a respondeat superior charge. He maintains the jury's request to

recharge on negligence was an indication of its confusion due to the misleading instructions.

PATH argues that the notice instructions were not prejudicial, but rather helped Orrico by providing two different ways to prove a foreseeable risk of harm because it could have been held liable for failure to inspect and notice of the unsafe condition even if it did not create the unsafe condition. As for the respondeat superior instruction, PATH argues that Orrico did not object to the lack of such an objection; he included such instruction in his pretrial exchange but lodged no objection when the judge did not include it in his jury charge. Furthermore, PATH maintains that the essence of a respondeat superior was included, when the judge instructed in section 89-22: "The fourth element is whether an injury to the plaintiff resulted in whole or in part from the negligence of the railroad or its employees or agents." PATH argues the omission of the instruction still would not have prejudiced Orrico based on Howard v. New Jersey Transit Rail Operations, Inc., 78 F. App'x 842, 843 (3d Cir. 2003) (holding the jury instruction "that the employer was directly liable for the negligence of its employees" was sufficient notice of the employer's liability and an easier standard for the plaintiff to satisfy).

In denying Orrico's motion for a new trial, the judge stated in his written decision:

> Most of the sections of the [c]ourt's charge including elements of a FELA cause of action, page 11 and 12 of the instruction, provided to Counsel, negligence and the definition of negligence, and foreseeability considerations, page 12 and 13 as well as thereafter identifying the [d]efendant's responsibility to provide a safe place to work which duty is non-delegable and a duty to inspect, are all engrafted from published federal jury instructions, including Matthew Bender's publication, with the citations in the Court's charge to the Bender identified numbered section.

A proper jury charge is essential to a fair trial. Pressler & Verniero, Current N.J. Court Rules, cmt. 3.3.2. on R. 2:10-2 (2018). In clear, understandable language, the jury charge should explain the law that applies to the issues at trial. Toto v. Ensuar, 196 N.J. 134, 144 (2008). The charge "is a road map that explains the applicable legal principles, outlines the jury's function, and spells out 'how the jury should apply the legal principles charged to the facts of the case at hand.'" Ibid. (quoting Viscik v. Fowler Equip. Co., 173 N.J. 1, 18 (2002)).

Under FELA, a railroad has a "nondelegable duty to provide its employees with a safe place to work." Shenker v. Balt. & Ohio R.R. Co., 374 U.S. 1, 7 (1963). A plaintiff must establish the customary elements of a negligence action, i.e., duty, breach,

causation, and damages. Stevens v. N.J. Transit Rail Operations, 356 N.J. Super. 311, 319 (App. Div. 2003). The "quantum of evidence required to establish liability in [a] FELA case is much less than in an ordinary negligence case." Kapsis, 313 N.J. Super. at 403 (quoting Harbin v. Burlington N. R. Co., 921 F.2d 129, 131 (7th Cir. 1990)).

Reasonable foreseeability, however, is a prerequisite to any claim. Hines v. CONRAIL, 926 F.2d 262, 268 (3d Cir. 1991). The employer's responsibility is measured by "what a reasonably prudent person would anticipate as resulting from a particular condition." Gallick v. Balt. & Ohio R.R. Co., 372 U.S. 108, 118 (1963). Nevertheless, to bypass the notice requirement in ordinary premises liability actions, a plaintiff may demonstrate that the defendant created a hazardous condition on its premises. See Smith v. First Nat'l Stores, Inc., 94 N.J. Super. 462, 466 (App. Div. 1967) ("Notice, either actual or constructive, is not required where a defendant . . . creates a dangerous condition."); Model Jury Charges (Civil), 5.20F(9), "Notice Not Required When Condition is Caused by Defendant" (rev. Oct. 2003).

In this case, the claim raised by Orrico was not one of notice, but that PATH created the unsafe condition which caused his injury. Under this limited accusation, the judge should not have instructed the jury on the theories of actual and constructive

12

notice because they were not consistent with his claim. By doing this, along with the aforementioned mistaken discretion in barring the testimony that PATH employees or agents created the unsafe condition that caused the accident, Orrico's FELA claim was prejudiced. Contrary to PATH's opposition, presenting an alternative theory of liability was unnecessary and clearly could have influenced the jury's no cause verdict. For the same reason, the judge should have instructed the jury more in line with Model Jury Charges (Civil), 5.10I, "Agency" (rev. Aug. 2011), which in part provides:

> A. Employer/Employee
> An employee is a person (or other entity) engaged to perform services for another, the employer, and who is subject to the employer's control or right to control the physical conduct required to perform such services. In determining whether a person or entity performing services is an employee, rather than an independent contractor or other relation, the following aspects may be considered:
> (1) the extent of control which, by agreement, expressed or implied, the entity for which the services are performed has the right to exercise over the details of the services performed;
> (2) whether one performing such services is engaged in an occupation or business distinct from that of the entity for which services are performed;
> (3) whether the services rendered are usually done under the direction of the employer in the particular locality, or whether such services are usually done by a specialist without such direction;

(4) the skill required in performing the services;

(5) whether the entity for which the services are performed supplies the instrumentalities, tools and place of work, or whether the entity performing the services supplies those items;

(6) the length of time anticipated for the performance of the services;

(7) the method of payment;

(8) whether the services to be performed are part of the regular business of the entity for which the services are performed;

(9) whether the parties believe they are in the relationship of employer and employee;

(10) whether the entity for which services are to be performed is in business; and

(11) such other factors as may be reasonably considered in determining whether the entity for which the services are being performed controls, or has the right to control, the entity performing the services.

. . . .

B. Respondeat Superior

1. When Agency is in Issue:

A principal, such as defendant [name] may act only through natural persons who are its officers, employees or agents [choose appropriate term]. Generally, any officer, employee or other agent [choose appropriate term] of an entity may bind that entity by acts and declarations made while acting within the scope of the authority delegated to the officer, employee, or agent [choose appropriate term] by the principal, or by acts and declarations made within the scope of the duties assigned to the officer, employee or other agent[choose appropriate term] of the principal.

So, if you find that an officer, employee or agent [choose appropriate term] of defendant [name] acted negligently while in the scope of his/her duties or authority, that negligence is as a matter of law charged to

14

the principal, here defendant [name]. If you so find, defendant [name] will be deemed negligent for the wrongdoing to the same extent as the officer, employee or agent.

Given the specifics of Orrico's allegations, the jury would have been provided a better roadmap under this instruction than the one given: the jury must decide if Orrico's injury could have resulted "in whole or in part from the negligence of [PATH] or its employees or agents."  And, despite Orrico's failure to object at the charge conference, we find his pre-trial request for a respondeat superior charge to be an adequate notification to the judge regarding the law that he wanted the jury to apply.

C. Defense Counsel's Misconduct

Orrico argues that PATH's counsel infringed upon the "golden rule" during his summation when he asked the jurors to put themselves in his shoes rather than what a reasonable person would have done to determine if PATH was liable.  At closing, counsel stated:

Put yourself in the situation.  Put yourself in that yard.  You've heard the story.  You know the facts.  You're working in the Harrison Yard, reflective safety vests, electrical graded safety shoes. Consider your tasks.  You're on and off and between heavy railroad equipment operating near the third rail.  You've been working all morning, a full morning shift in the yard.  You've moved 20 to 25 different trains already.  You're holding over on overtime.  It's a hot day,

certainly sunny, but interestingly about the glare from the sun, you testify specifically that you can see where you're going, that the glare doesn't bother you.

Now you come up the ladder. You hit the switch for the train on six. The train comes in and it makes its (indiscernible). Now you don't wait for that train to pull out so that you can walk across the apron. You have to get to the 11 track down the yard so you cross in front of the equipment on six track. How are you doing it? How are you walking? Are you looking down carefully stepping over that third rail, that first rail, walking along the ties until you come to the next rail, walking along the ties until you come to the next rail, watching each step you take? And then where do you go? You walk towards the track.

Well, how do you do it? If you're being careful, if you're being reasonable, if you've got your common sense you're watching where you're walking. That's not what happened with Mr. Orrico. That's not what he told us. He told us that after he came around the car he was looking straight ahead. He didn't see that two and a half-foot by 1.4 foot depression in the ballast.

PATH trains, PATH provides safety equipment, PATH provides annual refreshers and inspections, but PATH can't make you be careful and watch where you are walking.

Orrico did not object at the time the remarks were made, but first raised the argument in his motion for a new trial. The judge found his argument was meritless as the remarks were not prejudicial and, thus, did not violate the golden rule.

We begin our review of Orrico's argument with the understanding that counsel has "broad latitude" to make closing arguments to the jury, <u>Diakamopoulos v. Monmouth Med. Ctr.</u>, 312 N.J. Super. 20, 32 (App. Div. 1998), but "[s]ummation commentary . . . must be based in truth," and counsel is not free to misstate the facts or the law, <u>Bender v. Adelson</u>, 187 N.J. 411, 431 (2006). Because Orrico did not object to counsel's summation at the time it was made, we apply the plain error rule and reverse only if the error could have possibly led the jury "to an unjust verdict." <u>State v. G.V.</u>, 162 N.J. 252, 262 (2000) (quoting <u>State v. Macon</u>, 57 N.J. 325, 335 (1971)). In civil cases, relief under the plain error rule "is discretionary and 'should be sparingly employed.'" <u>Cavuoti v. N.J. Transit Corp.</u>, 161 N.J. 107, 129 (1999) (quoting <u>Ford v. Reichart</u>, 23 N.J. 429, 435 (1957)); <u>Bldg. Materials Corp. of Am. v. Allstate Ins. Co.</u>, 424 N.J. Super. 448, 487 n.14, (App. Div. 2012). The failure to object to counsel's summation comments may be interpreted as an indication that the alleged errors were not so egregious in the context of the entire trial that they affected the jury's verdict. <u>See</u> <u>Tartaglia v. UBS PaineWebber, Inc.</u>, 197 N.J. 81, 128 (2008). Moreover, the excesses of summation could have been corrected at trial by a timely objection and curative instruction. <u>See</u> <u>Bender</u>, 187 N.J. at 433.

The golden rule is based on the principle that "you should do unto others as you would wish them to do unto you." Geler v. Akawie, 358 N.J. Super. 437, 464 (App. Div. 2003). It is improper for an attorney to invoke the rule because it tends to encourage "the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence." Id. at 464-65 (quoting Spray-Rite Serv. Corp. v. Monsanto Co., 684 F.2d 1226, 1246 (7th Cir. 1982)), aff'd on other grounds, 465 U.S. 752, 104 S.Ct. 1464, 79 L. Ed. 2d 775 (1984). A golden rule argument suggests to jurors that they should "adopt what they would want as compensation for injury, pain and suffering." Id. at 464.

Although the general rule is generally invoked to prohibit a plaintiff's appeal to the jury concerning damages, we can envision a situation where either party's summation might solicit the jury to decide liability for personal reasons and not the evidence. We conclude PATH counsel came ever so close in crossing that line in the noted comments, and would have been better off in making more artful remarks by not constantly referring to "you" in addressing the jury. However, considering there was no objection and our cautious use of plain error in civil matters, we are not convinced that the comments were solely so prejudicial as to cause an unjust result. Therefore, we will not disturb the judge's ruling that

18

PATH's summation was not prejudicial to Orrico on the issue of liability. Nevertheless, the comments taken in the light of the cumulative other errors provide a further basis to reverse and remand for a new trial.

D. <u>Motion For New Trial</u>

As noted, federal law governs a FELA action, including a determination of whether a verdict is contrary to the weight of the evidence. <u>Kapsis</u>, 313 N.J. Super. at 402; Pressler & Verniero, <u>Current N.J. Court Rules</u>, cmt. 1.6 on <u>R.</u> 4:49-1 (2014). When examining the denial of a motion for a new trial under federal law, a reviewing court applies the abuse of discretion standard, <u>see</u> <u>Springer</u>, 435 F.3d at 274, and the evidence is viewed in the light most favorable to the party for whom the verdict was returned, <u>Wagner</u>, 890 F.2d at 656. A new trial should be granted "only where the 'great weight' of the evidence cuts against the verdict and 'where a miscarriage of justice would result if the verdict were to stand.'" <u>Springer</u>, 435 F.3d at 274 (quoting <u>Sheridan</u>, 100 F.3d at 1076 (en banc)).

In light of our determinations regarding the admission of evidence and the jury instructions, we conclude the jury verdict was a miscarriage of justice to Orrico and he should be given a new trial.

Affirmed in part, reversed in part, and remanded for a new trial consistent with this opinion.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2380-15T1